UNITED STATES of America,
Plaintiff-Appellee,

v.

Lasco Lavaun HURT,
Defendant-Appellant.

No. 85–3058.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1986.

Decided July 25, 1986.

Robert C. Weaver, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

John S. Ransom, Ransom, Blackman & Simson, Portland, Or., for defendant-appellant.

Before FLETCHER, ALARCON, and WIGGINS, Circuit Judges.

ALARCON, Circuit Judge:

Lasco Lavaun Hurt (hereinafter Hurt) appeals from a conviction of two counts of violation of 18 U.S.C. § 2 and § 1461 for use of the mails for the delivery of two packages containing nonmailable obscene materials.

## I. CONTENTIONS ON APPEAL

Hurt seeks reversal on the following grounds.

One. Section 1461 does not apply to persons who use the mail to order and receive obscene materials.

Two. Section 1461 of Title 18 is unconstitutional as applied to him.

Three. The district court erred in denying his motion to suppress the physical evidence seized in his home pursuant to a search warrant that failed to describe with particularity the items to be seized.

Four. The district court erred in admitting into evidence other allegedly obscene material to prove the defendant's knowledge of the nature of the films he ordered and received through the mails.

Five. The evidence was insufficient to prove that he knew the nature and contents of the films he ordered and received in the mail.

Six. The district court erred in imposing consecutive sentences because the evidence showed that he committed only the offense of using the mails to send a single order for three obscene films that were received simultaneously in two separate packages.

We reject each of Hurt's contentions concerning the judgment entered regarding Count One. We reverse Count Two as a violation of the rule against multiple sentences for a single offense.

## II. PERTINENT FACTS

The evidence in this case consisted of the testimony of a customs officer and a postal inspector and materials seized at Hurt's home. No defense evidence was offered.

On or about September 1, 1983, Hurt mailed an order form to Alex Smit, Post Office Box 705, Stockholm, Sweden in which he requested that three films be sent to him. The films were paid for by a money order in the amount $476.06 made payable to Alex Smit. The instructions for the ordering of Smit films requested that the title not be set forth on the order form. Instead, the consumer was directed to place an "X" in the appropriate box.

In response to this order, Smit mailed three films to Hurt in two separate packages. The customs declarations on one package stated it contained a name plate. In fact, it contained one film entitled "First Suck," and another entitled "Young Girl." The second package bore a customs declaration identifying the contents as a tablecloth. Instead, it contained a film entitled "Dick, Billy, and Mike." The films in the packages were not on reels. These packages were inspected on December 7, 1983, at the international mail facility in Oakland, California, by United States Customs mail technicians. Each film depicted children engaged in sexually explicit conduct.

The packages were forwarded by government officials to the United States Customs Service in Portland, Oregon. There, the packages were again inspected by United States Postal Inspector Robert Luttrell. A search warrant was obtained to search Hurt's residence based upon the obscene content of the three films. The warrant authorized the seizure of the films after their delivery to Hurt. The warrant also permitted the seizure of any other materials depicting minors engaged in sexually explicit conduct and "[c]orrespondence, and records of any kind reflecting the ordering, receipt, shipping, and payment for child pornography."

On December 21, 1983, Postal Inspector Luttrell gave the packages to a mail carrier who delivered them to Hurt's residence. Thirty minute later, Postal Inspector Luttrell and eight or nine law enforcement officers entered the Hurt residence pursuant to the search warrant. As soon as the officers entered, Special Agent Daniel Nafziger advised Hurt of his right to remain silent and his right to counsel. The parties stipulated that this admonition complied with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Hurt advised the officers that he understood his rights. Special Agent Nafziger asked Hurt if he recognized the officer from a previous interview concerning the subject of pornography. Hurt told the officer that the materials they were probably looking for were on the coffee table. The sexually explicit films delivered by the mail carrier were on the coffee table. The film was unreeled.

Special Agent Nafziger then asked Hurt where he kept his pornography. The parties stipulated that Hurt took the officers to his bedroom and opened a closet which contained approximately eighteen films, albums, and books depicting or describing minors engaged in sexually explicit conduct. The officers also found a gray file box which contained a money order receipt. Hurt told the officers that he had used the money order to obtain the films delivered that day. The officers found the mail wrappers for the two packages of Smit

films in a trash burner in the kitchen. A search of the premises revealed a photo album containing pictures of children engaged in sex acts with other children and adults. The officers also found two publications that contained photographs of minors engaged in sex acts with adults. The officers also discovered a film in a closet in the bedroom depicting a minor engaging in sex acts with a dog and an adult male. The search also revealed several brochures advertising publications which depict children engaging in sexually explicit conduct. One was entitled "Teenager."

The officers also located an Alex Smit ordering brochure that contained a list of blocks with numbers. The officers did not discover any brochure that contained the names of the films that corresponded to the numbers on the order form.

On July 17, 1984, Hurt was charged in two counts with "knowingly us[ing] the United States Mails for the mailing, carriage in the mails and delivery of nonmailable matter" depicting children engaged in obscene conduct in violation of 18 U.S.C. § 1461 (1984) and 18 U.S.C. § 2 (1984). Hurt waived trial by jury. He was convicted as charged. The district judge found as a fact that the "defendant knew full well the pornographic character of that which he ordered from Amsterdam." He also found, after viewing the films in question, that they met the standards for obscenity as set forth in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1972). He was given consecutive sentences.

## III. DISCUSSION

### A. APPLICABILITY OF SECTION 1461 TO A PERSON WHO USES THE MAILS TO ORDER OBSCENE MATERIALS

Hurt claims that the district court erred in denying his motion to dismiss the indictment. He argues that section 1461 does

not apply to the recipient of obscene materials.[1]

The denial of a motion to dismiss an indictment is reviewed for abuse of discretion. *United States v. Moore*, 653 F.2d 384, 389 (9th Cir.), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 680, 70 L.Ed.2d 646 (1981). A trial court does not have the discretion to misapply the law. If the district court's ruling is based on its construction of a statute, we are required to make an independent or *de novo* interpretation of the applicable law. *United States v. Louisiana Pacific Corp.*, 754 F.2d 1445, 1447 (9th Cir.1985); *see also United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Hurt was indicted under that portion of section 1461 that provides in pertinent part as follows:

Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section ... to be nonmailable ... shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned no more than ten years, or both, for each such offense thereafter.

The language "whoever knowingly uses the mails" in section 1461 does not limit prosecution to a person who uses the mails to *send* obscene materials to another. The language of the statute is broad enough to include persons who use the mails to *order* the delivery of obscene materials. Hurt does not argue that a person who uses the mails to order the delivery of sexually explicit material is not included within the plain meaning of the words "whoever knowingly uses the mails." Instead, he contends that Congress enacted section 1461 solely "to penalize the sender of such material." He relies on the opinion of the district court in *United States v. Sidelko*, 248 F.Supp. 813 (M.D.Pa.1965) to support his argument that we must disregard the expansive sweep of the language used by Congress. We decline to adopt the holding in *Sidelko* because the district court in that matter failed to apply the appropriate rules of legislative construction.

In *Sidelko*, as here, the defendant was accused of using the mails to order obscene materials. The district court granted the defendant's motion for a judgment of ac-

1. Section 1461 provides as follows:
    Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance; and—
    Every article or thing designed, adapted, or intended for producing abortion, or for any indecent or immoral use; and
    Every article, instrument, substance, drug, medicine, or thing which is advertised or described in a manner calculated to lead another to use or apply it for producing abortion, or for any indecent or immoral purpose; and
    Every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, or how, or from whom, or by what means, any of such mentioned matters, articles, or things may be obtained or made, or where or by whom any act or operation of any kind for the procuring or producing of abortion will be done or performed, or how or by what means abortion may be produced, whether sealed or unsealed; and
    Every paper, writing, advertisement, or representation that any article, instrument, substance, drug, medicine, or thing may, or can, be used or applied for producing abortion, or for any indecent or immoral purpose; and
    Every description calculated to induce or incite a person to so use or apply any such article, instrument, substance; drug, medicine, or thing—
    Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.
    Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section or section 3001(e) of title 39 to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.
    The term "indecent", as used in this section includes matter of a character tending to incite arson, murder or assassination.

quittal on the ground that section 1461 does not apply to the *recipient* of obscene matter through the mails. The district court in *Sidelko* noted that prior to 1958, punishment under section 1461 was limited to a person who "knowingly deposits for mailing or delivery" nonmailable material. In 1958, however, the statute was amended by substituting the words "[w]hoever knowingly uses the mails" for the words "[w]hoever knowingly deposits." The district court in *Sidelko* looked to the legislative history to discern the basis for this amendment. The court noted that the legislative history reflected concern by Congress that in *United States v. Ross*, 205 F.2d 619 (10th Cir.1953), the Tenth Circuit had held that, under section 1461, an accused could be prosecuted only at the *place of deposit* of the obscene matter in the mails. The *Sidelko* court concluded that the amendment "was designed to overcome the effect of the Ross decision." 248 F.Supp. at 814. The district court in *Sidelko* determined that the words used in the amendment to section 1461 were "not intended to apply to persons who order and receive such matter for personal use and consumption." *Id.* at 815. The *Ross* decision was the only authority cited by the court in support of its decision. No reference was made to any of the canons of legislative construction.

The method used by the court in *Sidelko* to interpret the language used by Congress is contrary to traditional rules of legislative construction and more recent decisions of the United States Supreme Court and the law of this circuit.

■ In construing a statute, we must first look to the plain language used by Congress. *North Dakota v. United States*, 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983); *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 110, 103 S.Ct. 986, 990, 74 L.Ed.2d 845 (1983); *Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349, 1353 (9th Cir.1985). If the language of the statute is unambiguous, it is conclusive unless there is a "clearly expressed legislative intention

to the contrary...." *North Dakota*, 460 U.S. at 312, 103 S.Ct. at 1102 (quoting *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)); *Dickerson*, 460 U.S. at 110, 103 S.Ct. at 990. Although we are aware of the rule of strict construction for criminal statutes, that rule does not allow us to ignore a statute's evident purpose. *United States v. Hogue*, 752 F.2d 1503, 1504 (9th Cir. 1985).

It is evident to us that the words "whoever knowingly uses the mails" include a person who uses the mails to order the delivery of obscene materials. Accordingly, we are precluded from reliance on legislative history to give the language of the statute a different construction unless we are directed to specific provisions of the legislative history that clearly express a contrary intent.

We have reviewed the legislative history. We cannot find, nor has Hurt identified, any clear expression by Congress that it intended to limit the words "whoever uses the mails" to persons who use the mails to *send* sexually explicit materials to consumers thereof. The fact that Congress amended the statute to insure that the sender of obscene materials could be prosecuted in any jurisdiction where such matter is delivered, does not evidence a clear intent to exclude from prosecution persons who use the mail to order nonmailable matter.

■ Therefore, after construing the plain meaning of the words employed by Congress, we conclude that section 1461 applies to a person who uses the mails to order the delivery of obscene materials.

B. CONSTITUTIONALITY OF SECTION 1461 AS APPLIED TO A PERSON WHO USES THE MAILS FOR THE DELIVERY OF OBSCENE MATERIALS FOR PERSONAL USE

Prior to trial, Hurt also sought dismissal of the indictment on the ground that a

person who uses the mails to order obscene materials is immune from prosecution under section 1461 because he has a constitutional right to possess such matter for his personal use. The district court denied his motion. We are also unpersuaded by this contention.

■ We review *de novo* the denial of a motion to dismiss an indictment on constitutional grounds. *United States v. Christopher*, 700 F.2d 1253, 1258 (9th Cir.), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983).

Hurt correctly observes that in *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), the Supreme Court held that a person may not be charged with the possession of obscene materials in his own home. *Id.* at 568, 89 S.Ct. at 1299. Hurt was not charged with or convicted of the *possession* of obscene materials. Section 1461 proscribes the *use of the mails* for the mailing, carriage, or delivery of sexually explicit materials, not the *possession* thereof.

Hurt asserts that the constitutional right to possess obscenity for personal use includes the right to receive obscene material for such purpose. This argument was rejected by the Supreme Court in *United States v. Orito*, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973). In *Orito*, the Supreme Court reiterated its rejection of the notion that "the right to possess obscene material in the privacy of the home ... creates a correlative right to receive it...." *Id.* at 141, 93 S.Ct. at 2676. Earlier, in *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), the Supreme Court noted that "Congress may constitutionally prevent the mails from being used for distributing pornography." *Id.* at 376, 91 S.Ct. 1408 (citing *United States v. Reidel*, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971)). In *Reidel*, the Supreme Court held that the prosecution of a distributor for the knowing use of the mails for the delivery of obscene matter in violation of section 1461 did not conflict with the right to *pos-*

*sess* obscenity in the privacy of the home. *Id.* at 354, 91 S.Ct. at 1411.

In *United States v. 12 200–ft. Reels of Super 8 MM. Film*, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), the Supreme Court stated that it was "not disposed to extend the precise, carefully limited holding of *Stanley* to permit importation of admittedly obscene material simply because it is imported for private use only." *Id.* at 128, 93 S.Ct. at 2669. More recently, in *Smith v. United States*, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977), the Court, in construing section 1461 instructed that "*Stanley* did not create a right *to receive*, transport, or distribute obscene material, even though it had established the right to possess the material in the privacy of the home." *Id.* at 307, 97 S.Ct. at 1767 (emphasis added).

Hurt argues that *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) decided four years before *Stanley* compels us to hold that the right to receive obscene material is "constitutionally protected once it is in his home." Appellant's Opening Brief, page 19. Hurt also asks us to reject the Supreme Court's limitation of *Stanley* in its decision in *12 200–ft Reels of Super 8 MM. Film* to the right to possess obscene materials in the privacy of the home as "fundamentally unconsistent [sic] with the foundational precepts of this country." Appellant's Opening Brief, page 18. These arguments must be addressed to the Supreme Court.

■ The federal Constitution does not protect the right to receive obscenity through the mails for personal use. The district court did not err in denying Hurt's motion to dismiss the indictment under *Stanley v. Georgia* and its progeny.

## C. ADEQUACY OF THE SEARCH WARRANT'S DESCRIPTION OF THE ITEMS TO BE SEIZED

Hurt asserts that the district court erred in denying his motion to suppress the items seized pursuant to the search warrant on the ground that it failed to describe the items to be seized with particularity.

■ We review *de novo* a challenge to the validity of a search warrant for the failure to particularly describe the items to be seized. *United States v. McClintock,* 748 F.2d 1278, 1282 (9th Cir.1984), *cert. denied,* — U.S. ——, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985).

■ Under the fourth amendment, a search warrant must "particularly describ[e] the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. The Constitution prohibits the issuance of general warrants that would lead to "exploratory rummaging in a person's belongings...." *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971)). The purpose of particularizing the items to be seized is to insure that when the warrant is executed, nothing is left to the officer's discretion. *United States v. Drebin,* 557 F.2d 1316, 1322 (9th Cir.1977), *cert. denied,* 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978); *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).

Hurt argues that the warrant failed to make any distinction between material which would be evidence in a prosecution under statutory provisions and that which would not. Appellant's Opening Brief, page 22. This argument is readily refuted by consulting the language of the warrant. The magistrate restricted the scope of the officer's search to the following items:

(1) Three films titled a) "First Suck"; b) "Dick, Billy and Mike"; and c) "Little Girl";

(2) Books, magazines, photographs, negatives, films and video tapes depicting minors (that is, persons under the age of 16) engaged in sexually explicit conduct; and

(3) Correspondence and records of any kind reflecting the ordering, receipt, shipping, and payment for child pornography;

which are the fruits, instrumentalities, and evidence of the offenses of the interstate transportation and mailing of child pornography, and the unlawful importation of child pornography, in violation of 18 U.S.C. §§ 2252 and 545, and 19 U.S.C. § 1305, and 18 U.S.C. §§ 1461 and 1462.

The affidavit filed in support of the search warrant described the three films as depicting sexually explicit conduct. The remaining items to be seized were restricted to (1) materials depicting children under the age of 16 engaged in sexually explicit conduct and (2) written documents that could serve as evidence of the use of the mails to order child pornography. The obscene films described in the warrant formed the basis for the prosecution in this matter. The remaining items described in the warrant consisted of evidence that would prove an element of the crime proscribed by section 1461. Moreover, the warrant sufficiently described evidence that would prove an element of the crime proscribed by section 1461. *United States v. Rubio,* 727 F.2d 786, 792 (9th Cir.1983); *United States v. Barnett,* 667 F.2d 835, 843 (9th Cir.1982). The seizure of "mere evidence" of the commission of a crime was authorized by the Supreme Court in *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 310, 87 S.Ct. 1642, 1651, 18 L.Ed.2d 782 (1967).

■ The warrant described the items to be seized with particularity and did not authorize a general search. The record does not support Hurt's allegation that the officers engaged in "generalized rummaging." The district court did not err in denying the motion to suppress.

## D. ADMISSIBILITY OF SEXUALLY EXPLICIT MATERIAL FOUND IN THE RESIDENCE OF THE ACCUSED

Hurt also seeks reversal on the ground that the district court erred in admitting books, magazines, and films seized by the officers to prove knowledge of the nature

of the three films described in the indictment. No objection to the admissibility of these objects to prove knowledge was made at trial.

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... a timely objection or motion to strike appears of record....

Fed.R.Evid. 103(a)(1).

Because Hurt failed to object at trial, we may not review this evidentiary ruling unless the appellant can demonstrate that the admission of the evidence was plain error affecting his substantial rights. Fed.R.Crim.P. 52(b). There is no plain error where the defendant has failed to demonstrate that the admission of the evidence affected the outcome and his right to a fair trial. *United States v. Rogers,* 769 F.2d 1418, 1426 (9th Cir.1985).

The government established Hurt's knowledge that the films he ordered were sexually explicit through the admissions of the defendant. The physical evidence objected to for the first time on this appeal was merely corroborative. Hurt has not demonstrated that substantial rights were affected by the trial court's rulings on admissibility, and therefore, we are precluded from reviewing this claim of error.

### E. SUFFICIENCY OF THE EVIDENCE TO SHOW KNOWLEDGE THAT OBSCENE MATERIALS WERE ORDERED

As discussed earlier, the district court found specifically that the films were obscene, under the test of *Miller v. California,* and appellant has not contended on appeal that they are not obscene. Hurt does contend that reversal is compelled because "the government failed to prove that he knew the nature of the films he received in the mail." Appellant's Opening Brief, page 27.

We consider a claim that the evidence was insufficient to support a criminal conviction by viewing the record in the light most favorable to the prosecution to see if, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

Section 1461 makes it a crime if a person "knowingly uses the mails" for the delivery of obscenity. 18 U.S.C. § 1461. Thus, knowledge is an essential element of 18 U.S.C. § 1461. Each element of the corpus delicti of a crime must be proven beyond a reasonable doubt. In *Hamling v. United States,* 418 U.S. 87, 123, 94 S.Ct. 2887, 2910, 41 L.Ed.2d 590 (1974), the Supreme Court held the knowledge requirement of section 1461 is satisfied if the prosecution proves that the defendant "knew the character and nature of the materials." *Id.* The government does not have to prove the accused knew that the materials are legally obscene. *Id.* Proof of the knowledge that the material is obscene may be established by circumstantial evidence. *See Smith v. California,* 361 U.S. 147, 154, 80 S.Ct. 215, 219, 4 L.Ed.2d 205 (1959) (eyewitness testimony is not required to establish knowledge of the contents of obscene material).

Hurt demonstrated his knowledge of the character and nature of the films he ordered from Smit when he told the officer who reminded him that they had had a previous conversation about pornography that the evidence they were looking for was on the coffee table. A rational trier of fact could readily conclude from this spontaneous utterance that Hurt knew that the unreeled film he had received moments before from the mail carrier depicted sexually explicit conduct. The evidence that Hurt ordered the film through a coded number, instead of setting forth the name of the motion picture he wished to purchase, and that the contents of the packages he received were unreeled and deceptively labelled to avoid official detection, also indicates that he was aware of their nature and character. The presence in the residence of other sexually explicit materials and a list of addresses of the suppliers of child pornography further supports the tri-

er of fact's conclusion that Hurt was a regular consumer of such materials and had the requisite knowledge when he ordered the films.

■ The evidence was sufficient to convince a trier of fact beyond a reasonable doubt that Hurt had knowledge that the films were obscene. The district court did not err in denying Hurt's motion for a judgment of acquittal.

### F. MULTIPLICITY

Hurt's final contention concerns the validity of the entry of a judgment conviction for two violations of section 1461 and the imposition of consecutive sentences for the use of the mails for the placement and delivery of a single order of three obscene films. Although Hurt objects only to consecutive sentencing, this court addresses the underlying issue of multiplicity as well.

As discussed above in Part II of this opinion, the grand jury charged Hurt under the first part of section 1461 which compels the prosecution of "whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section or section 3001(e) of Title 39 to be unmailable." Thus, the indictment focuses on a single act of using the mails to order three obscene films. Notwithstanding the fact that Hurt's conduct involved a single transaction, the grand jury charged Hurt in Count One with knowingly using the mails for the delivery of two films, and in Count Two with the delivery of the third film. Apparently, the decision to charge two counts resulted from the fact that *Smit* elected to send the films in two packages. Presumably, had Smit placed each film in a separate package, the grand jury would have indicted *Hurt* for three violations of section 1461. On the other hand, using the same logic, had Smit placed all three films in one package, Hurt would presumably have been prosecuted for a single violation of the statute.

■ The rule against multiplicity prohibits the charging of a single offense in several counts and is intended to prevent

multiple punishment for the same act. *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). The text of section 1461 gives no clear indication whether placement of a single order through the mails should result in punishment for multiple offenses, should the distributor respond to the request by mailing separate packages. In *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), the Supreme Court held that:

> [I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses....

*Id.* at 84, 75 S.Ct. at 622.

■ It is not clear that Congress intended multiple punishment under section 1461 where there is no proof that a person who uses the mails to order several items intended that several packages be mailed in response to his request. We resolve the uncertainty by holding that the sending of one order for three obscene movies is a single offense.

The government argues that Hurt was properly convicted of two counts of violating section 1461 because Smit used the mails in conduct as the distributor of obscene materials. This contention is inconsistent with the government's position that section 1461 applies to the conduct of a person who uses the mails to *order* sexually explicit material.

Specifically, the government insists that "Congress showed its intent to hold each parcel to be a violation when it stated that ... '*every* obscene, lewd, lascivious, indecent, or vile article, matter, thing or substance' is a nonmailable matter." Appellee's Brief, pages 19–20 (emphasis in original). This argument confuses the definition of nonmailable matter with the elements of the crime of using the mails for the delivery of such items.

After listing several items, including obscene matter, Congress stated that each "[i]s declared to be nonmailable matter and

shall not be conveyed in the mails or delivered from any post office or by any letter carrier." 18 U.S.C. § 1461.

The elements of the conduct prohibited by Congress follow this declaration of the type of items that are nonmailable. Nowhere in the definition of the crimes described in section 1461 did Congress indicate that a person who sends a single order for several nonmailable items is guilty of more than one offense. Hurt did not send more than one package through the mail. The distributor, Smit, used the mails for such purpose. The government's argument appears to be addressed to an issue not before this court, i.e., can Smit be prosecuted for each package sent through the mail in response to a single order for several sent through the mail in response to a single order for several nonmailable items, and, if so, can Hurt be prosecuted for Smit's crime under 18 U.S.C. § 2 ("Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal"). It should be noted that the government did not obtain an indictment against Hurt for knowingly causing *Smit* to deliver sexually explicit films through the mails. Section 1461 provides that "[w]hoever ... knowingly causes to be delivered by mail according to the direction thereon, *or at the place it is directed to be delivered by the person* to whom it is addressed ... shall be fined ... or imprisoned ...." 18 U.S.C. § 1461 (emphasis added). Hurt was not charged under this part of section 1461. Thus, we cannot determine whether he could have been charged with more than one offense for causing Smit to mail the films in separate packages.[2]

## CONCLUSION

Section 1461 prohibits the use of the mails to order the delivery of obscene materials for personal use in the privacy of the home. Because section 1461 proscribes the shipment of obscenity, not its possession, the statute does not violate the first amendment.

The rule against multiplicity compels us to resolve our uncertainty in favor of the defendant regarding the responsibility of the recipient for the act of the distributor in sending more than one parcel through the mails in filling a single order for several items. Therefore, we conclude that a person sending a single order for obscene material through the mail should not be punished based on the number of packages he receives from the distributor.

We affirm the judgment of conviction regarding Count One. We reverse the judgment imposed as to Count Two as a violation of the rule against multiple sentences for a single offense. AFFIRMED IN PART, REVERSED IN PART.

---

2. The government's reliance on *United States v. Crockett,* 534 F.2d 589 (5th Cir.1976) and *Hanrahan v. United States,* 348 F.2d 363 (D.C.Cir.1965) in support of its proposition that Hurt can be held liable for two separate crimes under section 1461 because he received two packages is misplaced. Each of these cases involves the prosecution of a person who sent fraudulent communications through the mails in violation of the mail fraud statute.