21 F.3d 1116
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramon DURON, III, Defendant-Appellant.
 No. 93-50460.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 8, 1994.*
Decided April 11, 1994.
 
 Before: PREGERSON, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Petitioner Ramon Duron, III appeals the sentence imposed after his conviction for assault with a dangerous weapon and possession of contraband in prison, in violation of 18 U.S.C. Sec. 113(c) and 18 U.S.C. Sec. 1791(a)(2). The District Court sentenced Duron to a term of 52 months on the assault charge and 32 months on the weapon possession charge, to be served consecutively. We have jurisdiction pursuant to 18 U.S.C. Sec. 3742(a). We affirm.
 
 BACKGROUND
 
 3
 Ramon Duron III, co-defendant Anthony Lawrence Gurule, Sr., and victim Paul Koonce were inmates at the United States Penitentiary at Lompoc, California on October 30, 1991. All three men were housed in the H-Unit, the segregation wing of the prison. Gurule and Duron were also cellmates.
 
 
 4
 On that day, at approximately 8:40 a.m., Gurule, Duron, victim Koonce, and another inmate were taken from their cells by Correctional Officers Freddie Smith and Neal LeMaire for recreation time in the H-Unit outdoor recreation area. Before leaving their cells, all three men were strip-searched, their clothes were searched, and they were reclothed in prison issue shorts, T-shirts, socks, and shoes and handcuffed.
 
 
 5
 Gurule, Duron, and Koonce had to pass through a "trap" which linked the prison building and the outdoor recreation cages. In October 1991, inmates were pat searched in the trap before being escorted outside; however, this did not include a search of the inmates' socks and shoes.
 
 
 6
 Before and after inmates were given recreation, the recreation cages were searched to ensure that no contraband was in the cages. The recreation cages measure approximately ten feet by twenty feet. On October 30, 1991, Officer Junior Fairweather was assigned to monitor the inmates' activities while they were in the H-Unit recreation cages. After going through the trap, Gurule, Duron, Koonce, and the fourth inmate were secured in recreation cage 3, and their handcuffs were removed.
 
 
 7
 Shortly thereafter, Officer Fairweather saw Gurule and Duron speaking furtively in a corner of the cage. A few minutes later, Fairweather saw Gurule and Duron, standing on both sides of Koonce, having a heated argument with Koonce, which developed into a fist fight. Gurule and Duron struck Koonce; Koonce did not fight back but tried to retreat. Fairweather yelled several times for the inmates to stop, but they ignored him.
 
 
 8
 Fairweather then observed Duron remove a prison-made knife from his sock and begin stabbing at Koonce. While Fairweather radioed for backup, Gurule and Duron continued to stab, hit, and kick Koonce in the head, neck, and chest area. Other correctional officers who arrived on the scene to assist Fairweather observed Gurule stab Koonce, while Duron kicked and hit Koonce. The fourth inmate in the cage had moved away and turned his back on the fight when it began.
 
 
 9
 Once sufficient backup staff arrived to control the situation, the officers opened the recreation cage and "swarmed" the inmates. Fairweather took the prison-made knife out of Duron's hand in the cage when Duron was subdued. The knife was made from a six-inch long by 3/4-inch wide piece of sharpened metal, with gauze cloth wrapped around one end as a handle. A search of the cage following the incident revealed two ink pens, one of which was broken. Fairweather tagged the confiscated prison-made knife and placed it in the penitentiary's safe as evidence.
 
 
 10
 Koonce was taken to the prison hospital for treatment of puncture wounds and lacerations to his face, neck, and chest, knees and elbows. The most serious wound was a cut on the right side of his neck below the jaw in an area near a major external carotid artery.
 
 
 11
 A jury convicted Duron and Gurule of Count One of the Indictment, which charged them with assault with a dangerous weapon (the prison-made knife) and aiding and abetting in that assault, in violation of 18 U.S.C. Sec. 113(c). Duron was also convicted of Count Two of the Indictment, which charged him with possession of a prohibited object in prison (the prison-made knife), in violation of 18 U.S.C. Sec. 1791(a)(2).
 
 
 12
 The Presentence Report recommended that Counts One and Two be grouped together under Sentencing Guideline Sec. 3D1.2(C) because "Count Two embodies conduct that was treated as a specific offense characteristic, or other adjustment to, the guideline applicable to Count One ... i.e., the specific conduct involved the use of the knife during the assault." (PSR at para. 26.) The Presentence Report went on to conclude that Duron's base offense level was 23 for Counts One and Two (a base offense level of 15, four levels for use of a "dangerous weapon" during the assault, plus four levels for "serious bodily injury" to Koonce), with a criminal history category of VI, resulting in a sentencing range of 92 to 115 months.
 
 
 13
 In his Statement of Objections and Motion for Downward Departure, Duron asserted, among other things, that no maximum penalty was provided in the statute for the possession charge. Thus, Duron contended, the statutory maximum for both counts was five, rather than ten, years.
 
 
 14
 The Government filed its opposition to Duron's statement, which asserted that Duron was subject to a maximum ten-year term for the two charges. The Government contended that the District Court should reject Duron's argument that no statutory maximum penalty was prescribed for a violation of 18 U.S.C. Sec. 1791(a)(2) (the weapons charge), because this argument was based on an obvious typographical error in the statute.
 
 
 15
 In response, Duron acknowledged that his argument was based on a typographical error, but argued that the District Court was estopped from imposing any sentence with respect to the weapons charge because Congress had failed to correct the error upon its discovery. Duron also asserted, for the first time, that sentencing him under both 18 U.S.C. Secs. 113(c) and 1791(a)(2) violated the double jeopardy clause proscription against double punishment for the same crime. Duron reasoned that he could not have assaulted Koonce with a deadly weapon unless Duron had possessed it.
 
 
 16
 The District Court determined that Duron was subject to an offense level of 21,[1] a criminal history category of VI, and a sentencing guideline range of 77 to 96 months. Duron was sentenced to 84 months imprisonment (52 months for Count One and 32 months for Count Two), to be served consecutively, followed by a three year term of supervised release.
 
 ANALYSIS
 
 17
 1. Sentencing Pursuant to 18 U.S.C. Sec. 1791
 
 
 18
 On appeal, Duron contends that the District Court erred in imposing on him a 32 month sentence for violation of 18 U.S.C. Sec. 1791(a)(2), the weapons charge in Count Two, because the statute fails to provide a penalty. Statutory interpretation is a legal issue which we review de novo. United States v. Valencia-Roldan, 893 F.2d 1080, 1082 (9th Cir.), cert. denied, 495 U.S. 935 (1990). Although criminal statutes are generally construed strictly in favor of the accused, we cannot ignore the statute's clear purpose. United States v. Hurt, 795 F.2d 765, 770 (9th Cir.1986), cert. denied, 484 U.S. 816 (1987).
 
 
 19
 Duron contends that he cannot be penalized for a violation of 18 U.S.C. 1791(a)(2), possession of a knife in prison, because no penalty is properly provided in the statute. Paragraph (b)(3) of the statute indicates that the statutory term of five years is reserved for contraband as specified only in paragraph (c)(1)(B). Due to a typographical error, paragraph (c)(1)(B) does not exist in the statute. Thus, reasons Duron, the District Court erred in imposing a sentence for his conviction on Count Two.
 
 
 20
 Section 1791(a)(2) states in relevant part:
 
 
 21
 (a) Offense.--Whoever--
 
 
 22
 * * *
 
 
 23
 * * *
 
 
 24
 (2) being an inmate of a prison ... possesses ... a prohibited object;
 
 
 25
 shall be punished as provided in subsection (b) of this section.
 
 
 26
 (b) Punishment.--The punishment for an offense under this section is a fine under this title or--
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 (3) imprisonment for not more than 5 years, or both, if the object is specified in subsection (c)(1)(B) of this section;
 
 
 30
 * * *
 
 
 31
 * * *
 
 
 32
 (c) Any punishment imposed under subsection (b) for a violation of this section by an inmate of a prison shall be consecutive to the sentence being served by such inmate at the time the inmate commits such violation.
 
 
 33
 (d) Definitions.--As used in this section--
 
 
 34
 (1) the term "prohibited object: means--
 
 
 35
 * * *
 
 
 36
 * * *
 
 
 37
 (B) ammunition, a weapon (other than a firearm or destructive device), or an object that is designed or intended to be used as a weapon ...;
 
 
 38
 Subsection (b) sets forth the maximum term of imprisonment applicable to violations of the statute depending on the type of prohibited object possessed by the inmate. Although subsection (b)(1) correctly mandates a 20-year term for prohibited objects listed in subsection (d)(1)(C), subsections (b)(2) through (b)(5) mistakenly refer to objects contained in subsections (c)(1)(A), (B), (D), (E), and (F). There are, however, no subparts to subsection (c). Thus, it is obvious upon reviewing the statute that the erroneous references are nothing more than a typographical error: the reference to paragraph (c)(1)(B) should have been to paragraph (d)(1)(B).
 
 
 39
 "In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." Gozlon-Peretz v. United States, 498 U.S. 395, 407 (1991) (quoting Crandon v. United States, 494 U.S. 152, 158 (1990)). In its brief, the Government provides us with a lengthy review of the legislative history of Sec. 1791 to demonstrate that the erroneous textual reference to a nonexistent subpart was merely a typographical error. Were this a case where the Appellant seriously disputed the intent of the statute in question, or where the statute was reasonably susceptible to more than one interpretation because of the error, we would further inquire into the legislative history of the statute for guidance as to its import and meaning. This, however, is not the situation in the present case.
 
 
 40
 Duron did not contend before the District Court--nor does he contend now--that Sec. 1791 was not intended to include penalties for the crimes described therein. Duron, in fact, concedes that the lack of a penalty under the statute is merely a typographical error when he notes that:
 
 
 41
 The Editor's note [in the Annotated Code] has indicated, for a period of years, that there is a problem. The Editorial Notes to section 1791 state: "References to subsec. (b) to subsec. (c) of this section failed to take into consideration redesignation of subsec. (c) as (d) by Pub.L. 100-690, sec. 6468.
 
 
 42
 (BB at 3.)
 
 
 43
 Therefore, we find that no issue exists as to whether a penalty may be imposed under Sec. 1791 based on a question of statutory interpretation because both Duron and the Government agree that Sec. 1791 was intended to provide such penalties.
 
 
 44
 Duron attempts to muddy the issue of interpretation by asserting that correction of the "typo" would only "create more ambiguity in interpreting the appropriate sentence." We disagree. A simple substitution of "(d)" for "(c)" in the appropriate part of the statute resolves any question of which penalty should properly be imposed for illegal possession of which prohibited object. Thus, we find that interpretation and intent cannot be seriously disputed.
 
 
 45
 In sum, we reject as meritless Duron's contention that he may not be penalized under Sec. 1791 because the statute provides no penalty.
 
 
 46
 Duron further contends that the District Court should be estopped from imposing a sentence pursuant to Sec. 1791 because the typographical error has not yet been corrected by Congress. We have held that estoppel within the context of sentencing is appropriate only where the defendant shows affirmative misconduct by the government and detrimental reliance by the defendant. McQuerry v. United States Parole Comm'n, 961 F.2d 842, 846 (9th Cir.1992).
 
 
 47
 We find that Duron has not demonstrated either of these conditions. A typographical error in a statute which is readily discoverable by a reading of the Editorial Notes and easily confirmable by a review of the legislative history of the statute is insufficient to support a finding of affirmative misconduct by the government.[2] In addition, Duron has made no attempt to demonstrate his reasonable reliance on the statute. Such reliance is reasonable if "a person sincerely desirous of obeying the law would have accepted the information as true and would not have been put on notice to make further inquiries." United States v. Brebner, 951 F.2d 1017, 1024 (9th Cir.1991). Duron could not possibly have concluded from reading Sec. 1791 as it now appears that he would not be violating the law by possessing a knife in prison. We therefore find that the District Court was not estopped from applying the five-year maximum penalty as mandated under 18 U.S.C. Sec. 1791(a)(2) based on Duron's conviction for possession of contraband in prison.
 
 
 48
 2. Asserted Double Jeopardy Violation in Sentencing
 
 
 49
 Duron also contends on appeal that the District Court's erroneous imposition of a consecutive sentence for Count Two (the weapon possession charge) violated the Double Jeopardy Clause of the Fifth Amendment. Duron reasons that, because he could not have assaulted Koonce with a dangerous weapon without possessing a dangerous weapon, the weapon possession charge is a lesser included offense of Count One for which he cannot be separately sentenced.
 
 
 50
 We review the question of whether a defendant's double jeopardy rights have been violated de novo. United States v. Horodner, 993 F.2d 191 (9th Cir.1993). The Double Jeopardy Clause mandates that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. As the Supreme Court stated in Missouri v. Hunter, however, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." 103 S.Ct. 673, 678 (1983).
 
 
 51
 In Albernaz v. United states, the Supreme Court enunciated a two-part inquiry to determine whether Congress intended to authorize multiple punishments for the same conduct. 101 S.Ct. 1137 (1981). First, we must consider the language of Secs. 113(c) and 1791(a)(2), the statutes in question. Id. at 1141. "Absent a 'clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' " Id. ( quoting Consumers Product Safety Comm'n v. GTE Sylvania, Inc., 100 S.Ct. 2051, 2056 (1980)). As in Albernaz, the statutes in the present case each describe separate offenses with separate penalty provisions which unambiguously authorize punishment for a violation of their terms.
 
 
 52
 We thus move on to the second inquiry, which is whether the consecutive sentences may be imposed when convictions under those statutes arise from participation in a single act. Albernaz, 101 S.Ct. 1137. This question must be resolved through application of the test articulated by the Supreme Court in Blockburger v. United States, 52 S.Ct. 180, 182 (1932). Id. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test ... is whether each [statutory] provision requires proof of a fact which the other does not." Blockburger, 52 S.Ct. at 182. The Blockburger test may be satisfied even where there is " 'substantial overlap in the proof offered to establish the crimes.' " Albernaz, 101 S.Ct. at 1142 ( quoting Iannelli v. United States, 95 S.Ct. 1284, 1293, n. 17 (1975)).
 
 
 53
 We find that the statutes in the present case meet the Blockburger test. Section 113(c) requires, among other things, proof that the defendant assaulted another with the intent to do bodily harm. Section 1791(a)(2) requires, among other things, proof that the defendant was an inmate in a federal prison at the time he possessed a prohibited object. These specific elements are mutually exclusive to each statute and require "proof of a fact that the other does not." Blockburger, 52 S.Ct. at 182. We therefore find that the second condition has been satisfied.
 
 
 54
 Additionally, Albernaz instructs us that congressional "silence" as to whether consecutive sentences may be imposed for violations of two separate statutes based on the same conduct should not be interpreted as creating ambiguity over whether Congress intended to authorize multiple punishments. 101 S.Ct. at 1143. "Congress cannot be expected to specifically address each issue of statutory construction which may arise." Id. "As a result, if anything is to be assumed from the congressional silence on this point, it is that Congress was aware of the Blockburger rule and legislated with it in mind." Id. at 1143-44.
 
 
 55
 In sum, under the tests enunciated in Albernaz, as well as our own case law,[3] the District Court did not erroneously impose a sentence on Duron in violation of his Fifth Amendment right to not be subjected to double jeopardy.
 
 
 56
 AFFIRMED.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The District Court reduced Duron's base offense level by two levels, from 23 to 21, finding that Koonce had suffered only "bodily injury," rather than "serious bodily injury," as defined in Secs. 2A2.2(b)(3)(A) and 2A2.2(b)(3)(B)
 
 
 [2]
 See, e.g., McQuerry v. United States Parole Comm'n, 961 F.2d at 846 (Parole Commission's erroneous use of street time while defendant was on special parole to calculate release date did not estop Commission based on affirmative misconduct from properly recalculating the release date without the street time.)
 
 
 [3]
 See United States v. Karlic, 997 F.2d 564, 566 (9th Cir.1993) (defendant properly consecutively sentenced for two convictions arising out of different subsections of the same statute (18 U.S.C. Sec. 844(h), using explosives to commit a felony, and 18 U.S.C. Sec. 844(i), destroying a building used in interstate commerce by means of an explosive))