[No. 18464-1-III.   Division Three.   May 9, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. ERNIE DUANE HERN, *Appellant*.

*Ernie Duane Hern,* pro se.

*David N. Gasch,* for appellant.

*Steven J. Tucker, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for respondent.

KURTZ, J. — Ernie Hern was found guilty of first degree burglary, two counts of second degree assault, and first degree unlawful possession of a firearm. Mr. Hern was sentenced to life without the possibility of parole under the Persistent Offender Accountability Act (POAA). Mr. Hern challenges his sentence contending that the 1995 amendment to the Sentencing Reform Act of 1981 (SRA) that changed the washout provisions for class C felonies to require that a defendant spend five years in the community without being convicted of any crime, not just felonies,

should not apply retroactively under *State v. Cruz*, 139 Wn.2d 186, 985 P.2d 384 (1999) and *State v. Smith*, 144 Wn.2d 665, 30 P.3d 1245, 39 P.3d 294 (2001). Additionally, Mr. Hern contends the court erred by giving an accomplice liability instruction. Pro se, he contends the court made several evidentiary errors and claims his counsel was ineffective. We affirm Mr. Hern's convictions, but we conclude his 1980 conviction cannot be counted as a "strike" in calculating his offender score. For that reason, we remand for resentencing.

## FACTS

On the evening of February 6, 1998, Linda Rawley was at home in the house she shared with her friend Kevin Conwell and his girl friend, Tamia Kimball. Another friend, Darlene Straughen, was visiting. Around midnight, a woman knocked at the door and asked if she could come in and use the phone because her car had broken down. When Ms. Straughen opened the door, a man in a ski mask pushed through the door and struck Ms. Straughen on the head, knocking her to the floor. While another man guarded Ms. Straughen, the man in the ski mask kicked down the bathroom door and found Ms. Rawley where she had run and hidden in the bathtub. He pointed a gun at Ms. Rawley and told her to get down. The man in the ski mask then kicked down the bedroom door where Ms. Kimball and Mr. Conwell had locked themselves in. Mr. Conwell, who pulled out his gun when he heard the commotion, shot the masked man three times and the man fell to the floor. The masked man was identified as Ernie Hern.

Mr. Hern was found guilty, following a jury trial, of first degree burglary, two counts of second degree assault and first degree unlawful possession of a firearm. The court sentenced Mr. Hern, as a persistent offender, to life without possibility of parole. In doing so, the court found that Mr. Hern had two prior "strikes" under the persistent offender law: a 1980 conviction for attempted second degree robbery

and a 1989 conviction for second degree robbery. This appeal follows.

## ANALYSIS

■ *Persistent Offender.* If a defendant is found to be a "persistent offender" in Washington under the POAA, the court must sentence the defendant to life in prison without the possibility of parole. Former RCW 9.94A.120(4) (1997).[1] A "persistent offender" is defined as (1) someone who has previously been convicted on at least two separate occasions, (2) in this state or elsewhere, (3) of felonies which would be considered most serious offenses under former RCW 9.94A.030(23) (1997), and that (4) would be included in the offender score under former RCW 9.94A.360 (1997). *State v. Morley*, 134 Wn.2d 588, 603, 952 P.2d 167 (1998) (citing former RCW 9.94A.030(27)(a)(ii) (1997)).

As a basis for imposing a POAA sentence, the court considered Mr. Hern's following criminal history:

- Attempted second degree robbery (class C felony) (convicted 1/24/80; paroled 6/27/83)
- Third degree assault (class C felony) (convicted 11/19/87)
- Second degree robbery (class B felony) (convicted 8/11/89; paroled 4/27/90)
- Fourth degree assault (gross misdemeanor) (convicted 7/22/91)
- Attempted second degree unlawful possession of a firearm (gross misdemeanor) (offense date 9/1/95; convicted 12/16/96)

The court found that the prior attempted second degree robbery and second degree robbery convictions constituted most serious offenses as defined in the POAA.

Before 1995, Washington's SRA provided that prior class C felony convictions other than a sex offense would not

---

[1] Recodified as RCW 9.94A.505 by LAWS OF 2001, ch. 10, § 6.

count toward an offender's score for the purpose of sentence determination if, since the last day of release from confinement, the defendant spent five consecutive years in the community without being convicted of any felonies. Former RCW 9.94A.360(2) (1992) (amended by LAWS OF 1995, ch. 316, § 1). In 1995, the language was amended, requiring the defendant to spend five consecutive years in the community without being convicted of any crimes, not just felonies. Former RCW 9.94A.360(2).

Mr. Hern contends that the 1980 attempted second degree robbery conviction washed out pursuant to former RCW 9.94A.360(2) because there was a five-year period between his release from custody in 1990 and the current offense when he had no *felony* convictions. Therefore, he argues that he had only one prior "most serious offense" conviction and was not eligible to be sentenced as a persistent offender. Application of the 1995 SRA amendments to revive the 1980 conviction, he argues, would violate the constitutional prohibition against ex post facto legislation, citing *Cruz*, 139 Wn.2d 186.

In *Cruz*, the defendant was charged in 1994 with first degree rape of a child. *Id*. at 187. He had two prior convictions: a 1975 conviction for rape, for which he was paroled in December 1977, and a 1989 conviction of first degree attempted burglary. *Id*. at 187-88. Under the pre-1990 washout provisions, Mr. Cruz's 1975 conviction washed-out by operation of law in December 1987 because he had been "felony free" for 10 years following his release. Thus, the 1975 conviction was not counted as a prior offense when his offender score was calculated for the 1989 burglary conviction.

In 1990, the wash-out provisions were amended, excepting sex offenses from the wash-out provisions of the SRA. *Id*. at 190. On review, the Supreme Court held the 1990 amendment to the SRA would apply retroactively (and therefore resurrect the conviction) only if: "(1) the [L]egislature so intended; (2) it is 'curative'; or (3) it is remedial, provided, however, such retroactive application does not

run afoul of any constitutional prohibition." *Id.* at 191 (citing *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 460, 832 P.2d 1303 (1992)). Because none of these factors existed, the court held the 1990 amendment to be prospective only. Therefore, the 1990 amendment did not revive Mr. Cruz's previously washed-out conviction and it could not be calculated as part of his offender score. *Cruz*, 139 Wn.2d at 191-93.

Prior to *Cruz*, courts that have looked at scoring issues related to statutory amendment have always looked at the date of the crime for determining whether the "new" law applied. The rule had been that the SRA statute governing at the time of the crime was used to determine a defendant's sentence. *State v. Wood*, 94 Wn. App. 636, 644-45, 972 P.2d 552 (1999); *State v. Angehrn*, 90 Wn. App. 339, 343-44, 952 P.2d 195 (1998); *State v. Watkins*, 86 Wn. App. 852, 855, 939 P.2d 1243 (1997).

■ In response to *Cruz*, the Legislature amended chapter 9.94A RCW to add two new sections:

**Sec. 1.** This act is intended to cure any ambiguity that might have led to the Washington [S]upreme [C]ourt's decision in *State v. Cruz*, Cause No. 67147-8 (October 7, 1999). A decision as to whether a prior conviction shall be included in an individual's offender score should be determined by the law in effect on the day the current offense was committed. This act is also intended to clarify the applicability of statutes creating new sentencing alternatives or modifying the availability of existing alternatives.

**Sec. 2.** A new section is added to chapter 9.94A RCW to read as follows:

Any sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed.

LAWS OF 2000, ch. 26, §§ 1, 2. These new sections became effective on June 8, 2000. Where an original enactment was ambiguous and a clarifying amendment or technical correction contravenes no judicial construction of the original statute, the amendment may be deemed curative, remedial, and retroactive. *State v. Jones*, 110 Wn.2d 74, 82, 750 P.2d

620 (1988) (citing *State v. Taylor*, 47 Wn. App. 118, 123, 734 P.2d 505 (1987)). A curative amendment or one that clarifies or technically corrects an ambiguous statute applies retroactively. *Cruz*, 139 Wn.2d at 191-92.

■ In *State v. Hendricks*, 103 Wn. App. 728, 14 P.3d 811 (2000), *rev'd by State v. Smith*, 144 Wn.2d 665, 30 P.3d 1245, 39 P.3d 294 (2001), the court affirmed a sentence that applied 1997 amendments to the SRA retroactively. In affirming the inclusion of a previously washed-out juvenile conviction, *Hendricks* held that offender scores were to be calculated under the version of the SRA in effect on the date of the current offense. In *Smith*, 144 Wn.2d at 672-73, the Supreme Court reversed *Hendricks* and reiterated the holding of *Cruz*. *Smith* held that RCW 9.94A.345 does not contain an explicit legislative comment that a 1997 amendment to the SRA applied retroactively. *Smith*, 144 Wn.2d at 672-73. The *Smith* court noted that such an explicit command is required. *Id.* RCW 9.94A.345 merely tells courts to apply the law in effect at the time of sentencing; it does not tell courts whether the law in effect, or an amendment thereto, should be applied prospectively or retroactively. *Smith*, 144 Wn.2d at 672-73.

■■ Except for the 2000 amendment, the SRA contains no language showing the Legislature intended the 1995 amendment to apply retroactively. Under *Cruz* and *Smith*, we cannot apply the 2000 amendment retroactively. Therefore, Mr. Hern's 1980 conviction washed out on April 27, 1995—three months before the 1995 amendment became effective on July 23, 1995. Mr. Hern's 1980 conviction cannot be counted as a "strike" in calculating his offender score.

*Accomplice Liability Instruction.* Mr. Hern contends the court erred by giving an accomplice liability instruction. He asserts the instruction, as given, was an incorrect statement of the law. Although he objected to the court's giving of this instruction at trial, he did not raise this issue until his supplemental brief. This court granted his motion to file a supplemental brief and include this issue on April 13,

2001. The motion was granted because the Supreme Court had issued an opinion in December 2000 that changed the law on accomplice liability.

■ The State concedes the accomplice liability instruction was an incorrect statement of the law. The court instructed the jury that "[a] person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime," the defendant either convinces another to commit a crime, or aids another in committing a crime. Report of Proceedings at 193. In *State v. Cronin*, 142 Wn.2d 568, 579, 14 P.3d 752 (2000), the Supreme Court held that an accomplice must act with "knowledge that his or her conduct would promote or facilitate *the* crime for which he or she is eventually charged." It is not enough for the defendant to act with knowledge that he or she is committing any crime. *Id.* at 578-79. An instruction that does not require the jury to find the accomplice acted with the knowledge that the crime charged was being committed is an incorrect statement of the law and is legally deficient. *Id.* at 579.

The instruction given by the court did not require the jury to find accomplice liability based upon the commission of the crimes charged. Rather, it merely required knowledge of the commission of "a crime." Clerk's Papers at 27. Under *Cronin*, this instruction would be legally deficient.

■ ■ However, the State claims the giving of the improper instruction was harmless. In addressing the harmless error issue, the *Cronin* court noted that the State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld. *Cronin*, 142 Wn.2d at 580. If the jury was instructed in such a manner that the State was relieved of this burden, then the conviction must be reversed. *Id.*

Mr. Hern was one of two men who broke into a home and assaulted two individuals therein. Mr. Hern was shot by one of the individuals in the house and found wounded when the police arrived. His weapon was found nearby.

Therefore, the evidence suggested he was a principal actor, not an accomplice.

However, Mr. Hern claimed it was the other assailant, not him, who committed the assaults. Therefore, in order to prove Mr. Hern was an accomplice, the State had to prove that he had knowledge he was aiding in the commission of a robbery and an assault. Mr. Hern's own statements, which were admitted at his insistence, indicated he and his partner had come to the house to get drugs. This statement shows his knowledge that he was helping in the commission of a robbery. Robbery requires the use of force. This would also suffice to show he knew he might also aid in the commission of an assault.

In closing, the State argued that it was Mr. Hern who committed the assault. The State mentions Mr. Hern's liability only with respect to the crimes charged, it never claims it was required only to show Mr. Hern knew he was going to commit a crime.

The State met its burden proving all of the elements of the crime charged. The evidence established that Mr. Hern acted with knowledge that his conduct would promote the crime for which he was charged. The giving of an erroneous instruction was harmless error.

*Sufficiency of the Evidence.* Pro se Mr. Hern lists numerous errors, but the only issue that he actually supports with argument is the sufficiency of the evidence to identify him as the man who committed the crimes. Mr. Hern contends that the State failed to produce the alleged ski mask and failed to prove what type of firearm was used. He also contends that the testimony was that there were two intruders in the house and he was never positively identified as the person who threatened Ms. Rawley in the bathroom. The shoe print on the bathroom door did not match Mr. Hern's shoes. Mr. Hern also argues that the testimony was that the intruder held the gun in his left hand, but Mr. Hern is right-handed.

■■ A defendant who claims insufficiency of the evidence admits the truth of the State's evidence and recog-

nizes that all reasonable inferences will be interpreted in the State's favor. *State v. Myers*, 133 Wn.2d 26, 37, 941 P.2d 1102 (1997); *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). The test is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Myers*, 133 Wn.2d at 37; *State v. Gentry*, 125 Wn.2d 570, 596-97, 888 P.2d 1105 (1995). The elements of a crime may be established by either direct or circumstantial evidence, and one type is no more valuable than the other. *State v. Thompson*, 88 Wn.2d 13, 16, 558 P.2d 202 (1977); *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986).

There was overwhelming evidence that Mr. Hern was the man who committed these crimes. Although Ms. Rawley did not identify Mr. Hern as the masked man who threatened her with a gun in the bathroom because she could not see his face, she did testify that the man who was shot was the same man who threatened her. That man was unmasked and identified by four people as Mr. Hern. There is no reasonable doubt that Mr. Hern broke into the house, carrying a gun, hit Ms. Straughen on the head, threatened Ms. Rawley, and was shot by Mr. Conwell. There was sufficient evidence to convict Mr. Hern of the charged crimes.

We affirm Mr. Hern's convictions and remand for resentencing.

KATO, A.C.J., and SCHULTHEIS, J., concur.