86 P.3d 1224 (2004)
STATE of Washington, Respondent,
v.
Leonard Ralph ASKHAM, Appellant.
No. 21413-3-III.
Court of Appeals of Washington, Division 3, Panel Four.
March 30, 2004.
*1226 Scott C. Broyles, Attorney at Law, Clarkeston, WA, for Appellant.
Ann C. Shannon, Deputy Prosecuting Attorney, Colfax, WA, for Respondent.

*1225 OPINION PUBLISHED IN PART
SWEENEY, J.
A search warrant must be sufficiently particular to prevent a general exploratory search. This is frequently achieved by specifying the suspected crime. State v. Riley, 121 Wash.2d 22, 28, 846 P.2d 1365 (1993). The search warrant here authorized the seizure of a broad range of computer files and images, but did not specify a crime. We conclude nonetheless that the warrant was specific enough. We also conclude that the evidence was sufficient to support Leonard Askham's convictions for second degree theft, criminal harassment, stalking, and libel. We therefore affirm the judgment.

FACTS
Mr. Askham's relationship with Sue Melhart ended in January 2000. His efforts to revive the relationship failed. Ms. Melhart developed a romantic relationship with her neighbor, Gerald Schlatter. Mr. Schlatter was Facilities Development Director at Washington State University (WSU).
On January 17, 2001, WSU President Lane Rawlins; Greg Royer, Vice President for Business Affairs and Gerald Schlatter's upper level supervisor; and Assistant Attorney General Antoinette Ursich, WSU counsel, received an anonymous e-mail accusing Mr. Schlatter of inappropriate use of a state computer. The e-mail accused Mr. Schlatter of visiting pornography and racist World Wide Web (Web) sites. An administrative investigation concluded the accusations were unfounded.
Mr. Schlatter turned over additional e-mails received on his office computer welcoming him as a member of various porn and racist Web sites. One of the siteslycos.comdisplayed two manufactured images of Mr. Schlatter's face electronically pasted onto a picture of a man receiving oral sex from a young male. The manufactured images were uploaded from an IP (Internet Protocol) address that was assigned to Leonard Askham. A lycos.com "photo center" account was also set up. There, more manufactured sex scenes were posted purportedly featuring Mr. Schlatter. Mr. Schlatter also received anonymous e-mails threatening to ruin his professional and social life and to inform the Federal Bureau of Investigation of these manufactured activities.
These e-mails originated from two locations with public Internet accessa business in Spokane and a public library in Coeur d'Alene, Idaho. With the cooperation of the Internet service provider and the Web site provider, investigators learned that the IP addresses were assigned to a user identified as "askham" at the relevant time. The handwritten account names and passwords were later found in Mr. Askham's home office.
The Pullman Police Department and the university president's office were also mailed hard copies of the manufactured images with a note: "Do you want a man like this, who is also a white spremasist [sic], working for your University?" Ex. 3. The Web site subsequently displayed more homoerotic images purportedly of Mr. Schlatter. The account "askham" was traced to Bird Shield Repellent Corp., with an address and phone number in Pullman belonging to Leonard Askham.
Police obtained a search warrant to seize Mr. Askham's computer and search his residence for evidence relating to all of this. The evidence recovered included an envelope addressed to Mr. Schlatter containing Mr. Schlatter's image and pornographic shots that matched those on the Internet sites. In a trash can searchers found numerous pictures from which the manufactured images had been obtained. A large number of entries of personal information about Mr. Schlatter were found in Mr. Askham's handwriting, as well as documents Mr. Schlatter had disposed of in his trash. Handwritten drafts of the threatening e-mails were also found in Mr. Askham's home office. The *1227 investigation of Mr. Askham's computer showed that it had altered the Internet images.
The State charged Mr. Askham with felony harassment, stalking, second degree theft, and libel. He challenged the particularity of the search warrant and moved to suppress the information. The court denied his motion.
The issue before the court at Mr. Askham's bench trial was whether Mr. Askham was the perpetrator. Mr. Askham's defense was that his computer was hacked by some person or persons unknown who wanted to injure Mr. Schlatter and frame Mr. Askham.
The court found the evidence compelling that someone had used Mr. Askham's home, identity, and computer to wage an electronic campaign to destroy Mr. Schlatter. The court found no evidence supporting the existence of a third party with a motive or opportunity to do this. The court then entered findings and conclusions and a judgment of guilt for felony harassment, stalking, second degree theft, and libel.

DISCUSSION
SEARCH WARRANT AFFIDAVIT
The first issue on appeal is whether the search warrant met the Fourth Amendment particularity requirement.
Mr. Askham challenges the sufficiency of the affidavit supporting the search warrant. He argues that neither this search warrant nor the accompanying complaint specify the crimes under investigation. Nor does the warrant specify the particular items to be seized. Although the warrant does mention Mr. Schlatter a couple of times, Mr. Askham contends this is not enough to limit the search to items connected with Mr. Schlatter. Moreover, he contends, a search limited to items relating to Mr. Schlatter is not limited to "criminal activity."
We review the legal sufficiency of a search warrant de novo. State v. Stenson, 132 Wash.2d 668, 691, 940 P.2d 1239 (1997). And we assess the validity of each warrant on a case-by-case basis. State v. Perrone, 119 Wash.2d 538, 546-47, 834 P.2d 611 (1992).
The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV; Stenson, 132 Wash.2d at 691, 940 P.2d 1239. The purpose of the particularity requirement is to prevent the State from engaging in unrestricted "exploratory rummaging in a person's belongings" for any evidence of any crime. Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The description of the items to be seized should leave nothing to the executing officers' discretion. United States v. Hurt, 795 F.2d 765, 772 (1986), amended on denial of reh'g, 808 F.2d 707 (9th Cir.1987). The officers should be able to "identify the property sought with reasonable certainty." Stenson, 132 Wash.2d at 692, 940 P.2d 1239.
The required degree of particularity may be achieved by specifying the suspected crime. Riley, 121 Wash.2d at 28, 846 P.2d 1365. Otherwise, the warrant must contain some other means of limiting the items to be seized. Id. The description should be as specific as the circumstances permit. Stenson, 132 Wash.2d at 692, 940 P.2d 1239. If the nature of the underlying offense makes descriptive precision impractical, however, generic classifications may be acceptable. Riley, 121 Wash.2d at 28, 846 P.2d 1365 (citing Perrone, 119 Wash.2d at 547, 834 P.2d 611; United States v. Spilotro, 800 F.2d 959, 963 (9th Cir.1986)).
The warrant at issue here does not specifically name the crimes under investigation. But it does describe the suspected criminal activity in some detail. And this description adequately limited the scope of the warrant. The warrant distinguishes those items the State has probable cause to seize from those it does not. See Spilotro, 800 F.2d at 964. Mr. Askham compares the warrant's authority to the following, held to be overbroad in Riley:
"any fruits, instrumentalities and/or evidence of a crime; to-wit:

*1228 notes, records, lists, ledgers, information stored on hard or floppy discs, personal computers, modems, monitors, speed dialers, touchtone telephones, electronic calculator, electronic notebooks or any electronic recording device."
Riley, 121 Wash.2d at 26, 846 P.2d 1365. This warrant permits the seizure of "broad categories of material" and is "not limited by reference to any specific criminal activity." Id. at 28, 846 P.2d 1365.
But the warrant here is more particular. The Askham warrant and complaint name Mr. Schlatter, detail the false accusations against him, identify the Web sites, and describe the offending images and threats. The warrant sets forth the evidence establishing probable cause, including the victim's own suspicions and the experts' backtracking through various online activities. The Askham warrant does propose to seize a broad range of computer equipment, central processing units, drives, disks, and other memory storage devices. But it also specifies the material to be searched for on that computer equipment. It lists text files relating to Mr. Schlatter and specific Web sites: lycos.com; hotmail.com; focalex.com; bodybuilding.about.com; eroticamail.com; and davidduke.com. It also specifies text files relating to manipulation of digital images or to uploading them to the Internet. It specifies also graphic images and graphic image files "of Gerald Schlatter; pornographic images including images of men engaged in oral sex, or images of nude men that may have been used in the manufacture of images of Gerald Schlatter uploaded to the internet." Clerk's Papers (CP) at 102. The warrant also authorized seizure of software related to the manipulation of digital images, typewriters, Mr. Askham's fingerprints, a handwriting sample, and certain postage stamps.
The same issue is addressed in State v. Clark.[1] There, the warrant affidavit did not contain the word "kidnap," but it did include enough information that the nature of the crime could be inferred and an officer executing the warrant would know what "trace evidence" referred to. State v. Clark, 143 Wash.2d 731, 749, 755, 24 P.3d 1006 (2001). Likewise here, the detailed description of the criminal activity leaves no doubt as to the items to be seized. The trial court correctly concluded that this was not a license to rummage for any evidence of any crime.
SUFFICIENCY OF EVIDENCE
Mr. Askham next challenges the sufficiency of the State's evidence.
The elements of a crime may be established by direct or circumstantial evidence. State v. Thompson, 88 Wash.2d 13, 16, 558 P.2d 202 (1977). One is not more valuable than the other. State v. Hern, 111 Wash.App. 649, 659, 45 P.3d 1116 (2002). Circumstantial evidence need not compel a finding of guilt. State v. King, 113 Wash. App. 243, 269-70, 54 P.3d 1218 (2002), review denied, 149 Wash.2d 1013, 1015, 69 P.3d 874 (2003). It is sufficient if it permits the fact finder to infer the finding beyond a reasonable doubt. Id. at 270, 54 P.3d 1218.
The evidence tracing the e-mails to Mr. Askham certainly permits the inference beyond a reasonable doubt that he sent them. One of the threatening e-mails was from a password controlled account at a public library. The only activity recorded on this account was when it was accessed from Mr. Askham's home computer. A handwritten copy of the exact text of another e-mail was found in Mr. Askham's desk. Mr. Askham admitted he went through Mr. Schlatter's garbage three times between September and February. Report of Proceedings (RP) at 670, 679, 711. He got his dates mixed up, claiming to have generated certain records days after defense counsel had sent them to the prosecutor. RP at 695-96. He acknowledged having jotted davidduke.com notes on the same slip of paper as Mr. Schlatter's credit card number, but claimed this was an unrelated coincidence. RP at 733.
Mr. Askham admitted writing what he called "poison pen" letters found in his desk, but denied sending them. RP at 710, 712. One of these, addressed to the president of WSU about Mr. Schlatter's supposed sexual *1229 proclivities is basically a draft of the e-mail. RP at 713-14. He admitted making a flow chart of the protocol for seeking personal information and how to use any information found. RP at 715-16. He conceded that no third party had any reason to know of any connection between him and Mr. Schlatter, let alone that he might be susceptible to being framed. RP at 727-28.
The court's findings are supported by the record. And the undisputed facts provide compelling circumstantial evidence supporting the convictions.
EMOTIONAL DISTRESS ELEMENT OF STALKING
Mr. Askham next claims that there was not a legally sufficient showing to support the crime of stalking.
Stalking requires proof of the following elements: (1) A person intentionally and repeatedly follows or harasses another person. RCW 9A.46.110(1)(a). (2) The victim reasonably fears injury to himor herself, another, or their property. RCW 9A.46.110(1)(b). (3) The perpetrator either intends to frighten, intimidate, or harass the victim or knows or reasonably should know that the victim feels afraid, intimidated, or harassed by the conduct. RCW 9A.46.110(1)(c)(i), (ii).
The State contends that Mr. Askham's stalking conviction was based on the "following" element as evidenced by his raiding of Mr. Schlatter's curbside trash can. But the trial court's findings and conclusions do not mention following. "Following" means "deliberately maintaining visual or physical proximity ... over a period of time." RCW 9A.46.110(6)(a). It has been judicially defined as deliberately and repeatedly correlating one's movements or appearances with those of another person to establish contact with that person. State v. Lee, 82 Wash.App. 298, 306, 917 P.2d 159 (1996), aff'd, 135 Wash.2d 369, 957 P.2d 741 (1998).
On its face, RCW 9A.46.110 does not seem to include trash snooping in the definition of "following." Nocturnal trash can surveillance does not involve "visual or physical proximity" intended to instill fear or distress. The courts do not even regard picking through a person's trash as unlawful, absent a local ordinance making it so. See, e.g., State v. Boland, 115 Wash.2d 571, 576, 800 P.2d 1112 (1990) (citing Seattle Municipal Code 21.36.100 (only city garbage collectors may handle curbside trash)). One should expect "children, scavengers, or snoops" to get into one's garbage. Id. at 578, 800 P.2d 1112.
But the trial court here found Mr. Askham guilty of stalking based on the entire course of harassing conduct, not just trash snooping: "The defendant repeatedly and intentionally harassed Gerald Schlatter and [Mr. Schlatter] was reasonably placed in fear that the person intended to injure his livelihood and reputation. The defendant is guilty of Count 4, stalking." CP at 40 (Conclusion of Law 24).
The offense of stalking imports the definition of "harassment" from RCW 10.14.020, the civil unlawful harassment statute. RCW 9A.46.110(6)(b). Civil unlawful harassment is defined as:
(1) ... a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress....
(2) ... "Course of conduct" includes ... the sending of an electronic communication.
RCW 10.14.020. Additional elements are required, then, when the alleged stalking conduct is harassment. The State must also prove:
 A course of conduct such as would cause a reasonable person to suffer substantial emotional distress, and
 Actual substantial emotional distress on the part of the victim.
RCW 10.14.020(1). The court made no express finding regarding substantial emotional distress.
We will affirm findings that the victim experienced substantial emotional distress and that the course of conduct would *1230 have caused substantial emotional distress to a reasonable person so long as substantial evidence supports these findings. State v. Noah, 103 Wash.App. 29, 39, 9 P.3d 858 (2000). Mr. Askham argues that expert testimony was required to show the necessary level of emotional distress. We find no authority for the proposition that only expert testimony can establish the reasonable person standard for emotional distress. The reasonable person standard is an objective one "within the ken" of the average fact finder. State v. Marshall, 39 Wash.App. 180, 184, 692 P.2d 855 (1984). "Expert testimony is neither needed nor required." Id. The fact finder must ultimately decide this question after considering the evidence with or without the benefit of an expert.
The State established a course of conduct designed to destroy Mr. Schlatter's life, both personally and professionally. This is sufficient to meet the reasonable person standard.
Mr. Askham also contends the record contains no substantial evidence of actual emotional distress.
Substantial evidence exists when the record contains evidence of sufficient quantity to persuade a fair-minded, rational person that the declared premise is true. State v. Foster, 135 Wash.2d 441, 471, 957 P.2d 712 (1998). The State concedes that the only evidence in the record that could arguably establish substantial evidence of emotional distress consists of Mr. Schlatter's repeated testimony that he felt threatened by the e-mails. Mr. Schlatter testified: "I felt threatened from the get-go on this situation, and quite clearly someone intended toto have my job, have my career professionally and my social life destroyed." RP at 162. Mr. Schlatter also testified: "[I]t's embarrassing, no question. And it's irritating.... I mean, youyou just can't get away from it. And it keeps coming back and coming back; it's not gone away." RP at 163.
We must give the State the benefit of all reasonable inferences from this testimony, as well as from the facts and circumstances of the entire course of conduct. State v. Theroff, 25 Wash.App. 590, 593, 608 P.2d 1254, aff'd, 95 Wash.2d 385, 622 P.2d 1240 (1980). And when we do so we conclude that a reasonable fact finder could find that the course of conduct was such as would cause emotional distress and that it did in fact cause emotional distress.
EVIDENCE SUFFICIENTSECOND DEGREE THEFT
Evidence is sufficient to support a conviction if, viewing it in a light most favorable to the State, a reasonable trier of fact could find from it the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221-22, 616 P.2d 628 (1980). "A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn therefrom." Theroff, 25 Wash.App. at 593, 608 P.2d 1254. Circumstantial evidence is no less reliable than direct evidence. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). Specific criminal intent "may be inferred from the conduct where it is plainly indicated as a matter of logical probability." Id.
To commit theft is to "wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services." RCW 9A.56.020(1)(a). A person is guilty of theft in the second degree if he or she commits theft of an access device. RCW 9A.56.040(1)(c). An access device can be an account number or other means of account access that can be used to obtain anything of value. RCW 9A.56.010(1).
The evidence supports the court's finding that Mr. Askham went through Mr. Schlatter's garbage. He obtained his credit card account number. And he used it to charge the membership fee to the davidduke.com Web site. Mr. Askham concedes that the handwritten credit card number was found on a slip of paper in his residence. The evidence shows that the number was used to associate Mr. Schlatter with a racist Web site. Mr. Askham said he did not do it. The court did not believe him.
And the fact that no expiration date was found is not dispositive. Mr. Askham does not challenge the court's finding that Craig *1231 Piro, Director of Security for American Express Credit Card Company, testified that it was not unheard of for a charge to go through without an expiration date, especially for a small amount.
The circumstantial evidence here is sufficient to support the court's finding that Mr. Askham obtained the number from a credit card statement in Mr. Schlatter's curbside garbage in the state of Washington with the intent to use it to incriminate Mr. Schlatter, and that he did so use it. An unauthorized use, by definition, deprives the owner of the authorized use.
The evidence was sufficient to show second degree theft.
We affirm the convictions.
The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.
WE CONCUR: KATO, A.C.J., and SCHULTHEIS, J.
NOTES
[1] State v. Clark, 143 Wash.2d 731, 24 P.3d 1006 (2001).