IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39943-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY WAYNE HAMPTON, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Law enforcement investigated Timothy Hampton for trafficking in stolen property and controlled substances. During the investigation, officers seized Hampton's brown briefcase, which contained electronic storage devices. Thereafter, a search warrant authorized law enforcement to search the electronic storage devices and all contents that showed possession of trafficking in stolen property or drugs. When reviewing files from the storage device, law enforcement viewed ten-year-old videos of Hampton engaging in sexual intercourse with his girlfriend, while she was incapacitated. The superior court refused to suppress the videos, and a jury convicted Hampton of twelve counts of rape and one count of voyeurism. We hold the search warrant invalid because of its overbreadth and reverse Hampton's convictions.

FACTS

The charges of rape against Timothy Hampton arise from an extended law enforcement investigation of stolen vehicles. This investigation led to the seizure of an electronic storage device containing a video of Hampton engaging in sexual activity with an unconscious S.H., the alleged victim of the rape.

On December 23, 2019, Stevens County jail inmate Andrew Ayers spoke with Stevens County Sheriff's Detective Travis Frizzell and Washington State Patrol Detective Steve White. Ayers disclosed that, four to six weeks earlier, he lived in a camp trailer with Robert Rogers behind the residence at 607 Prouty Corner Loop Road in Stevens County. Without providing the details of his disclosures, Ayers revealed facts suggesting the presence of stolen vehicles at the residence's property.

On December 30, 2019, Detectives Travis Frizzell and Steve White visited Robert Rogers at his camp trailer. Rogers divulged additional information suggesting the trafficking of stolen vehicles. Rogers added that the person in possession of a possible stolen pickup was "Tim," who lived behind D-J Second Hand Store in Kettle Falls. Clerk's Papers (CP) at 163. Stevens County Sheriff's Deputy Crystal Lofts identified "Tim" as Timothy Hampton, who she knew resided behind the store. After procuring Hampton's phone number, Detective White called him. Hampton affirmed he had

recently purchased a Dodge Ram pickup. He agreed to meet with detectives at his residence.

When detectives arrived at Timothy Hampton's residence, they examined the Dodge truck's identity. A records check confirmed someone stole the pickup from the Colville Tribal Reservation. Hampton consented to a recorded interview, during which he provided a handwritten bill of sale and a completed Washington State vehicle trade form. He insisted he had paid $2,000 in cash and traded another vehicle for the pickup.

While law enforcement remained on Timothy Hampton's property, Hampton asked Detective Travis Frizzell to examine the VIN on a Suzuki Enduro motorcycle in his backyard, which he claimed to have received as collateral for a $1,600 debt owed him by Robert Rogers. The motorcycle had been spray-painted, thereby obscuring its original colors. A records check revealed the motorcycle had been reported stolen in Wenatchee.

Detective White spotted a black Dodge Charger parked in a lean-to garage near the pickup. When questioned, Hampton denied any knowledge of the Charger. Hampton speculated that Rogers deposited the car on the property. Hampton allowed the detectives to inspect the car. Records confirmed the car to be stolen in Spokane on December 13, 2019. Hampton then bestowed permission on Detectives White and Frizzell to review the ownership of all vehicles on his property.

3

Law enforcement's review of other vehicles on the land confirmed a 36-foot Heartland trailer as stolen. Another motorcycle had been stolen from the Colville Tribal Reservation. Timothy Hampton claimed he purchased the motorcycle from someone who arrived at his job site in Ferry County with the bike loaded in the back of a pickup truck. Hampton submitted a nearly illegible handwritten bill of sale on a torn envelope.

Detective Travis Frizzell sought and garnered a warrant to search Timothy Hampton's cell phone based on the belief the phone contained evidence of the transfer of stolen vehicles. Text messages on the phone suggested Hampton and Robert Rogers worked together to traffic stolen vehicles and controlled substances.

On January 8, 2020, the Stevens County Sheriff's Office executed a search warrant at Timothy Hampton's residence. The warrant authorized the seizure of keys to the Dodge Charger and Heartland trailer and to cell phones. When searching the home, officers saw controlled substances and drug paraphernalia. This discovery led to a second warrant to search for evidence of controlled substances. During the execution of the second search, officers opened a brown briefcase, located in Hampton's closet, that held paperwork, a stolen notary stamp, and electronic storage devices. The parties alternatively call the electronic storage devices "SD cards," "flash drives," and "thumb drives." All three of these objects differ from one another in terms of size and storage capacity but all serve the same function as memory devices that store electronic data that

include videos, photographs, personal records, and messages.  We will only refer to the

objects as "electronic storage devices" or "storage devices."  The deputies seized the

briefcase and its contents, including the storage devices.

On January 29, 2020, Detective Travis Frizzell signed an affidavit for an

additional search warrant, outlining the investigation beginning on December 23, 2019,

with Andrew Ayers' interview at the Stevens County Sheriff's Office and extending

through the seizure of the briefcase.  The affidavit declared in part:

> Due to the above facts and circumstances, there is probable cause to
> believe that Robert Rogers and Timothy Hampton are conspiring together
> to purchase and sell narcotics, as well as purchase and traffic stolen
> property, most notably vehicles.  I believe evidence will be located in the
> briefcase that was seized in Timothy Hampton's closet during the execution
> of a search warrant for stolen property and drugs.  Numerous items were
> located inside the briefcase that included upon a brief visual inspection,
> thumb drives, vehicle titles, license plates, identification cards, a notary
> public stamp and various documents.

> ## PLACES TO BE SEARCHED

> Therefore, based upon the above facts and circumstances I request
> that a search warrant be issued directing the search of [the] . . . Brown
> briefcase belonging to Timothy Hampton, currently located in the Stevens
> County Sheriff's evidence facility.  All contents of the briefcase to include
> flash drives, vehicle titles, paperwork, stamps, and, all contents that show
> possession of and trafficking in stolen property.
> The obtainment of this information I believe will assist in the
> identification of the individual(s) engaged in activities in violation of
> RCW 9A.56.170, Possess Stolen Property in the Third Degree;
> RCW 9A.82.055 Trafficking Stolen Property in the Second Degree;

RCW 69.50.4013, Possession of a Controlled Substance; RCW 59.50.401, Possession of a controlled substance with intent to deliver.

ITEMS TO BE SEARCHED FOR

From location # 1 listed above Brown briefcase belonging to Timothy Hampton, currently located in the Stevens County Sheriff's evidence facility. All contents of the briefcase to include flash drives, vehicle titles, paperwork, stamps, and all contents that show possession of and trafficking in stolen property.

I am requesting permission to search for and seize the following:

A) Evidence of the crime of RCW 9A.56.170, Possess Stolen Property in the Third Degree; RCW 9A.82.055 Trafficking Stolen Property in the Second Degree; RCW 69.50.4013, Possession of a Controlled Substance; RCW 59.50.401, Possession of a controlled substance with intent to deliver.

B) Any data that may be kept on any of the seized digital devices in any format to include but not limited to intact files, deleted files, deleted file fragments or remnants related to the purchase, possession, receipt and distribution of controlled substances and or stolen property.

(CP) at 150-51.

The superior court signed a search warrant that began:

Upon sworn affidavit made before me by Detective Travis C. Frizzell there is probable cause to believe that the crime(s) of RCW 9A.56.170, Possess Stolen Property in the Third Degree, RCW 9A.82.055 Trafficking Stolen Property in the Second Degree; RCW 69.50.4013, Possession of a Controlled Substance; RCW 59.50.401, Possession of a controlled substance with intent to deliver has been committed and that evidence of the crime is/are concealed in or on certain premises, vehicles, or persons.

CP at 153. The warrant commanded law enforcement to search for a:

[b]rown briefcase belonging to Timothy Hampton, currently located

in the Stevens County Sheriff's evidence facility. All contents of the briefcase to include flash drives, vehicle titles, paperwork, stamps, and all contents that show possession of and trafficking in stolen property.

The warrant further directed law enforcement officers to seize from the briefcase:

A) Evidence of the crime of: RCW 9A.56.170, Possess Stolen Property in the Third Degree; RCW 9A.82.055 Trafficking Stolen Property in the Second Degree; RCW 69.50.4013, Possession of a Controlled Substance; RCW 59.50.401, Possession of a controlled substance with intent to deliver.

B) Any data that may be kept on any of the seized digital devices in any format to include but not limited to intact files, deleted files, deleted file fragments or remnants related to the purchase, possession, receipt and distribution of controlled substances and or stolen property.

CP at 154.

On January 30, 2020, Detective Travis Frizzell perused electronic devices found inside the brown briefcase. While reviewing one of the video files, he watched Timothy Hampton undress and engage in sexual contact with a female who appeared to be sleeping. In another video, Hampton pried open the unresponsive woman's mouth and placed his penis inside the mouth. Detective Frizzell showed a portion of the video to his colleague, Detective Mark Coon. Detective Coon identified the woman as S.H., a Kettle Falls resident who maintained an earlier romantic relationship with Hampton.

Detective Travis Frizzell thereafter unearthed four other secure digital (SD) cards and one external storage device that contained sexual content. The videos had been last accessed between 2011 and 2013.

7

On February 5, 2020, Detective Travis Frizzell, by phone, notified S.H. about the videos. Frizzell explained that the videos depicted her, while unconscious, being sexually assaulted by Timothy Hampton. S.H. responded that she never gave Hampton permission to record her and recounted her earlier outrage when learning Hampton took photos of her without her consent.

On February 18, 2020, a reluctant S.H. wrote a statement for law enforcement. She explained that, during her relationship with Timothy Hampton, she self-medicated with alcohol and prescription drugs. S.H. believed Hampton assaulted her while she was unconscious due to her intoxication on alcohol and drugs. S.H. insisted she lacked knowledge of the sexual activity recorded on the video and that she never consented to sexual activity or being recorded in such a state of undress.

PROCEDURE

On April 2, 2020, the State of Washington charged Timothy Hampton with twelve counts of second degree rape and one count of voyeurism. The information alleged that Hampton engaged in sexual contact with a mentally incapacitated or physically helpless person. An amended information listed the offenses as occurring between July 28, 2010, and July 14, 2013 and identified each separate charge by the corresponding video file date and name.

On February 11, 2022, Timothy Hampton moved to suppress the search and seizure of the video files. He argued that the warrant was overly broad and lacked sufficient particularity, which allowed law enforcement to conduct a sweeping search of his electronic storage devices beyond a search relevant to trafficking of stolen property and drug possession for which probable cause existed. Hampton also contended that officers exceeded the warrant's scope by reviewing multiple video files unrelated to drugs or stolen property.

During the suppression hearing, Timothy Hampton's counsel questioned Detective Travis Frizzell about his ability to discern the dates of the creation and times of access to electronic video files. Counsel also asked for the dates and creation of the videos that depicted Hampton's sexual assaults on S.H.:

> [DEFENSE]: Do you have general knowledge of computers, computers and computer files?
> [DETECTIVE FRIZZELL]: Yes, I do.
> [DEFENSE]: And are you based off your knowledge, do you know how to determine when a file has been created?
> [DETECTIVE FRIZZELL]: Yes. If you —
> [STATE]: Your Honor, I'm going to object. There's no foundation for him to testify. He hasn't testified what his knowledge is, that he has any type of training, and he's attempting to testify regarding things that are beyond his — at least at this point foundation for him to testify.
> [COURT]: Okay. That will be overruled. I think his general knowledge everybody — almost everybody nowadays knows a little bit about computers. So, I will allow — what he can testify to is what his knowledge is. Go ahead.
> [DEFENSE]: And how do you find out when a file has been created?

9

[DETECTIVE FRIZZELL]: With the cursor on the file as it is, if you right click on your mouse, it will bring up a menu, if you go down to the properties and open that, it will give the date created, modified and accessed. And it's listed as the file was created —

[STATE]: Your Honor, I object, it's beyond the scope of the question.

[COURT]: Okay. And that's sustained. Miss Bittle, you can ask another question.

[DEFENSE]: When was this file created?

[DETECTIVE FRIZZELL]: March 3rd, 2013 at 1:50 and 44 seconds in the a.m.

[DEFENSE]: And when was it modified?

[DETECTIVE FRIZZELL]: March 3rd, 2013 at 1:50 and 44 seconds in the a.m.

[DEFENSE]: And what type of file is this?

[DETECTIVE FRIZZELL]: It's a movie file.

[DEFENSE]: And you did view this file?

[DETECTIVE FRIZZELL]: Yes, I did.

[DEFENSE]: And generally, what is this file — what did you observe this file to depict?

[DETECTIVE FRIZZELL]: Sexual content between Mr. Hampton and [S.H.].

Rep. of Proc. at 395-96.

The trial court denied the motion. The court rejected Timothy Hampton's characterization of the warrant as overly broad. The superior court also ruled that Detective Travis Frizzell's viewing of the 2013 video files did not exceed the authorization given in the search warrant.

At trial, S.H. testified that she frequently lost consciousness when drinking alcohol while she lived with Timothy Hampton. She lacked a memory of the incidents depicted

in the videos. Hampton testified that S.H. and he worked conflicting schedules. He worked early while she worked late, a practice that required one to awaken the other for the purpose of sexual encounters. Hampton averred that the two engaged in role-playing and that he believed S.H. knew of the recordings. He avowed he had stored the videos and had not watched them.

After the parties rested, Timothy Hampton renewed his motion to suppress the videos. The trial court denied the motion. The jury convicted Hampton on all charges.

LAW AND ANALYSIS

On appeal, Timothy Hampton assigns error to the superior court's denial of his motion to suppress, the lack of preemptory challenges to alternate jurors, and his sentence. We agree that the trial court should have granted the motion to suppress. Therefore, we do not address the other assignments of error.

When challenging the use of the 2013 video files as evidence, Timothy Hampton raises two discrete arguments. First, the warrant authorized an overbroad and unfettered search of electronic storage devices found in the briefcase. Second, Detective Travis Frizzle exceeded the scope of the authorized search when he viewed movie files stored on computer drives without regard to their date or connection to the crimes being investigated.

We agree with Timothy Hampton's first argument of an overly broad search warrant. The warrant did not limit the search and seizures to the crimes for which law enforcement possessed probable cause. Overly broad warrants particularly offend the Fourth Amendment to the United States Constitution when permitting searches of computer data. We do not address Hampton's second contention.

Timothy Hampton characterizes the search warrant as empowering an unshackled search of his electronic storage devices found in the briefcase. According to Hampton, the warrant did not limit the content of the files stored within the electronic devices.

The Fourth Amendment demands in part that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The latter part of this clause requires specificity in a search warrant. *State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992). Article I, section 7 of the Washington State Constitution states that "no person shall be disturbed in their private affairs or have their home invaded without authority of law." This state constitutional provision also compels particularity in search warrants. *State v. Perrone,* 119 Wn.2d 538, 549 (1992). Although Timothy Hampton cites article I, section 7, in his brief, he does not contend that the Washington constitution affords him greater protection under his circumstances. Instead, his analysis conflates the two constitutional analogs. Therefore, we rely on decisions construing both constitutions.

12

The Bill of Rights framers adopted the particularity requirement to protect against the abhorred general warrant and writs of assistance of the colonial period used by the British to justify indiscriminate exploratory rummaging of personal property. *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 301, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967); *State v. Perrone*, 119 Wn.2d 538, 545 (1992). The particularity requirement provides important protection against governmental invasion of privacy because the demand renders general searches impossible and prevents the seizure of one thing under a warrant describing another. *Marron v. United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231 (1927). The particularity requirement also ensures judicial oversight of the scope of a law enforcement search such that the executing officer lacks unlimited discretion when executing the warrant. *Marron v. United States*, 275 U.S. 192, 196 (1927). The warrant must be based on probable cause of criminal activity and must limit the scope of the search to the probable cause determination. *State v. Fairley*, 12 Wn. App. 2d 315, 317, 457 P.3d 1150 (2020).

Specificity consists of two components: particularity and breadth. *State v. McKee*, 3 Wn. App. 2d 11, 23, 413 P.3d 1049 (2018), *rev'd on other grounds*, 193 Wn.2d 271, 438 P.3d 528 (2019). Particularity demands that the warrant clearly state what is sought. *In re Grand Jury Subpoenas Dated December 10, 1987*, 926 F.2d 847, 856-57 (9th

Cir.1991). Breadth requires the scope of the warrant be limited by the probable cause on

which the warrant is based. *In re Grand Jury Subpoenas Dated December 10*, *1987*, 926

F.2d 847, 856-57 (9th Cir. 1991).

A properly issued warrant distinguishes those items for which the State has

probable cause to seize from those objects it does not. *State v. Askham*, 120 Wn. App.

872, 879, 86 P.3d 1224 (2004). A warrant's description suffices if it is as specific as the

situation and the circumstances permit. *State v. Griffith*, 129 Wn. App. 482, 488, 120

P.3d 610 (2005). Law enforcement often identifies suspected crimes in order to meet the

particularity prerequisite. *State v. Riley*, 121 Wn.2d 22, 28, 846 P.2d 1365 (1993). We

evaluate the legal sufficiency of a search warrant in a common sense, practical manner,

rather than in a hypertechnical sense. *United States v. Turner*, 770 F.2d 1508, 1510 (9th

Cir. 1985); *State v. Perrone*, 119 Wn.2d 538, 549 (1992). We assess each warrant's

validity on a case-by-case basis. *State v. Perrone*, 119 Wn.2d 538, 546-47 (1992).

Washington and other courts recognize that a search of computers or electronic

storage contrivances raises heightened particularity concerns. *United States v. Russian*,

848 F.3d 1239, 1245 (10th Cir. 2017); *State v. Askham*, 120 Wn. App. 872, 879 (2004);

*State v. McKee*, 3 Wn. App. 2d 11, 24-25 (2018), *rev'd on other grounds*, 193 Wn.2d

271, 438 P.3d 528 (2019). Warrants issued to search electronic devices call for specific

sensitivity. *State v. Fairley*, 12 Wn. App. 2d 315, 320-21 (2020).

In *State v. Askham*, 120 Wn. App. 872 (2004), Leonard Askham manufactured and distributed homoerotic pornographic images superimposing the face of Gerald Schlatter, the boyfriend of Askham's former girlfriend. Askham then sent Schlatter an anonymous e-mail threatening to ruin his professional and social life. Law enforcement obtained a warrant to seize Askham's computer and to search the computer for all files related to Schlatter. Because the warrant limited the search of computer files to those involving Schlatter, this court rejected Askham's challenge to the broadness of the warrant. The warrant allowing seizure of Timothy Hampton had no such limitation.

*State v. Griffith*, 129 Wn. App. 482 (2005), presents an opposite story. The search warrant listed cameras, unprocessed film, computer processing units, electronic storage media, documents pertaining to Internet accounts, and videotapes among the items to be searched and seized. The supporting affidavit declared that Aaron Griffith used a digital camera to photograph the victim and that he stored pictures on a computer. The affidavit did not suggest that Griffith uploaded pictures to the Internet or that he used film or videotapes. We adjudged the warrant overbroad because it permitted a search of videotapes and Internet documents, neither of which had any connection to the alleged offenses.

Timothy Hampton contends that a warrant to search electronic storage devices must specify the file types, date ranges, and content relevant to the investigation. Absent

15

these restrictions, he argues, such a warrant fails to satisfy the Fourth Amendment and article I, section 7's particular requirements. We question whether the search warrant must always identify the file types, date ranges, and content to pass constitutional muster. Instead, under article I, section 7, a warrant to search electronic data need not specify a time frame or file types, only that its specificity prevent law enforcement from proceeding as if they have "a license to rummage for any evidence of any crime." *State v. Askham*, 120 Wn. App. 872, 880 (2004). Because of the broad breadth of Timothy Hampton's briefcase search warrant, we need not resolve the required specificity of a warrant.

We recognize that one scanning an electronic storage device generally first sees an index of files stored on the device. The list of files will disclose the date the user opened the file or the last date of modification of the file. Sometimes the index describes the file.

The subject search warrant challenged by Timothy Hampton contains seemingly inconsistent provisions. At the beginning of the search warrant, the superior court recognized that probable cause supported only the crimes of possession and trafficking in drugs and stolen property. Based on the beginning of the warrant alone, a reader of the warrant could reasonably conclude any search needed to stay within the bounds of the investigation of stolen property and controlled substances.

16

But there is more.  The body of the warrant contained three paragraphs that we

repeat and parse.  The warrant first commanded law enforcement to search:

> All contents of the briefcase to include flash drives, vehicle titles, paperwork, stamps, *and* all contents that show possession of and trafficking in stolen property.

CP at 118 (emphasis added).  This language suggests that any review of the electronic

storage devices is distinct from the perusal of contents demonstrating possession and

trafficking in stolen property such that law enforcement may read all files within the

storage devices regardless of their connection to the crimes.  The contract and statutory

maxim of ejusdem generis, meaning "of the same kind," declares that a court will deem a

general term used in conjunction with specific terms to include only those things of the

same class or nature as the specific ones.  *Viking Bank v. Firgrove Commons 3, LLC*, 183

Wn. App. 706, 716, 334 P.3d 116 (2014); *Simpson Investment Co. v. Department of*

*Revenue*, 141 Wn.2d 139, 151, 3 P.3d 741 (2000) (statutory interpretation); *Kitsap*

*County v. Allstate Insurance Co.*, 136 Wn.2d 567, 590-91, 964 P.2d 1173 (1998)

(contract interpretation).  We assume that we should apply the same maxim to a search

warrant or other court order, but we find no case that does so.  Regardless, the maxim

directs us to read the phrase "contents that show possession of and trafficking in stolen

property" as being in the same class as "flash drives, vehicle titles, paperwork, and

17

stamps," not vice versa. Therefore, the order's first paragraph did not constrain the review of flash drives to those files involving stolen property and narcotics.

The second and third paragraphs of the search warrant further directed law enforcement officers to seize from Timothy Hampton's briefcase:

> A) <u>Evidence of the crime of</u>: RCW 9A.56.170, Possess Stolen Property in the Third Degree; RCW 9A.82.055 Trafficking Stolen Property in the Second Degree; RCW 69.50.4013, Possession of a Controlled Substance; RCW 59.50.401, Possession of a controlled substance with intent to deliver.
> B) <u>Any data</u> that may be kept on any of the seized digital devices in any format to include but not limited to intact files, deleted files, deleted file fragments or remnants related to the purchase, possession, receipt and distribution of controlled substances and or stolen property.

CP at 154. These paragraphs again separate files storing evidence of the crimes from all other files within the electronic storage devices. Paragraph B, like the first paragraph previously discussed, ended the sentence with files regarding the two crimes, but the sentence does not limit the search to such subject matters. Instead, paragraph B emphatically directs the search of "any data" from the seized storage devices. CP at 154. In short, we conclude that the search warrant authorized Detective Travis Frizzell to review any files contained within the two seized storage devices no matter the date of opening and subject matter of the file, including videos of sexual activity.

18

We deem *State v. Fairley*, 12 Wn. App. 2d 315 (2020), to govern Timothy

Hampton's appeal. The Pasco Police Department received reports of telephonic bomb

threats directed at Columbia Basin College. An investigation led to a cell phone number

associated with Steven Brown, who lived in Kennewick. The superior court issued a

warrant authorizing law enforcement to search two areas: (1) Brown's residence and

(2) his Jeep Cherokee. The subscribing officer's affidavit of probable cause declared that

evidence of the crime of threats to bomb would be found at Brown's property. The

warrant authorized seizure of listed property, including Brown's cell phone. The warrant

did not authorize, however, a search of the cell phone. Despite the lack of an express

authorization, law enforcement, after seizing the phone, searched the contents of Brown's

cell phone. Forensic testing recovered seventeen text messages sent to Brown's phone

from Zachary Fairley's phone number. The messages entailed communications between

Fairley with Brown's daughter for purposes of prostitution. The State charged Fairley

with multiple solicitation offenses. The trial court denied Fairley's motion to suppress

the text messages on the grounds that Fairley lacked standing to challenge a search

warrant issued for Brown's property and a warrant to seize the cell phone authorized the

extraction of all data found in the phone's recesses.

This court reversed denial of Zachary Fairley's motion to suppress and convictions

for importuning prostitution. In so ruling, the court characterized the cell phone as an

electronic storage device. Authorization to seize a cell phone does not extend to authorization to search in part because phones function as minicomputers that hold information from both the mundane to the intimate aspects of a person's life. The search of a phone leads to the exposure of more information than a search of a house. Allowing a search of the entire contents of a phone would eliminate the particularity content of the Fourth Amendment and condone a general warrant. The warrant must narrowly tailor the information to be garnered from the phone to prevent over seizure and over searching beyond the warrant's probable cause authorization. Rather than allowing law enforcement officers to operate through inferences, the Fourth Amendment demands a cell phone warrant specify the types of data to be seized with sufficient detail to distinguish material for which there is probable cause from information that should remain private. In addition to identifying the crime under investigation, the warrant might restrict the scope of the search to: (1) specific areas of the phone, such as applications pertaining to the phone, photos, or text messages, (2) the content, such as outgoing call numbers, photos of the target and suspected criminal associates or text messages between the target and suspected associates, and (3) the time frame, such as materials created or received within 24 hours of the crime under investigation. The warrant could also require compliance with a search protocol, designed to minimize intrusion into personal data irrelevant to the crime under investigation. The responsibility

20

for setting the bounds of the search lies with the judicial officer issuing the warrant, not with the executing officer.

The State relies principally on *United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997), when arguing that the search warrant need not have afforded a precise description of the computer files to search. The United States Customs Service learned that a computer toted into the United States stored a Danish computer bulletin board system called "BAMSE," which accumulated child pornography. A caller, with the alias "Jim Bakker," accessed the bulletin board through his phone. Bakker downloaded six picture files containing computerized visual depictions. Customs agents traced the caller's phone number to an apartment occupied by a computer analyst named Scott Lacy. A warrant was issued authorizing the search of Lacy's apartment and seizure of computer equipment and records and documents relating to BAMSE. Customs agents seized Lacy's computer and more than 100 computer disks. The computer hard drive and disks contained files depicting minors engaged in sexually explicit activity. The United States district court denied a motion to suppress.

On appeal, Scott Lacy argued that the warrant was too general because it authorized the seizure of his entire computer system. The Ninth Circuit Court of Appeals rejected the appeal because the Lacy warrant contained objective limits to help officers determine which items they could seize. The search warrant only allowed seizure of

documents linked to BAMSE. Closer in parallel to Timothy Hampton's challenge is *United States v. Kow*, 58 F.3d 423 (9th Cir. 1995), in which the Ninth Circuit Court of Appeals invalidated a warrant authorizing seizure of all the defendant's computer hardware, software, and essentially all the computer's records, files, ledgers, and invoices.

The search of Timothy Hampton's electronic storage devices conducted by Detective Travis Frizzell verifies the impermissible breadth of the search warrant. Detective Frizzell's affidavit established probable cause to believe Timothy Hampton and Robert Rogers engaged in a criminal conspiracy to purchase and sell narcotics in 2020, not almost a decade earlier. Hampton established, during the suppression hearing, that Frizzell knew how to determine when video files were created and last accessed. Hampton established that Frizzell could determine the date of the videos depicting sexual contact with S.H. to be in 2013. By viewing videos from 2013, Detective Frizzell stepped inside a time machine and outside the confines of probable cause. The State's argument that the warrant sanctioned Frizzell's view of the 2013 files defeats its defense of the constitutionality of the warrant. If we ruled that the search warrant limited the search to evidence of possessing stolen property or controlled substances and thereby upheld the validity of the warrant, we would need to rule that Detective Frizzell's search exceeded the scope of the warrant.

A court must suppress evidence seized due to an overly broad search warrant. *State v. Denham*, 197 Wn.2d 759, 766, 489 P.3d 1138 (2021); *State v. Perrone*, 119 Wn.2d 538, 556 (1992). The trial court should have suppressed the videos showing Travis Hampton sexually assaulting S.H. Because the State cannot convict without the videos, the charges should be dismissed.

## CONCLUSION

We remand to the superior court for vacation of Timothy Hampton's convictions and for dismissal of the charges.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Murphy, J.