[No. 59648-9. Division One. June 2, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. DENNIS JAMES CLAY, *Appellant*.

*David L. Donnan* and *Susan F. Wilk* (of *Washington Appellate Project*), for appellant.

*Janice E. Ellis, Prosecuting Attorney*, and *Seth A. Fine, Deputy*, for respondent.

¶1 LEACH, J. — Dennis Clay challenges his conviction of second degree theft for possession of a stolen access device. He argues that the credit card found in his possession was not an access device because it had never been activated and was never in the possession of its intended user. We affirm.

¶2 Clay was arrested by a community corrections officer for violating the conditions of his probation for a previous conviction. During the search incident to Clay's arrest, the officer found a Mervyns credit card in Clay's pocket. The name on the front of the card was Berna B. Llorico, and the back of the card was signed with the same name. Llorico testified that she had had a single Mervyns account for more than five years, that her account number had changed, but that she never received a new card. Thus, she had neither seen nor signed the card in Clay's possession. At the end of the prosecution's case in chief, Clay moved to dismiss based on insufficient evidence. He argued that the State had failed to prove that the card was an "access device" as defined in RCW 9A.56.010(1). The trial court denied his motion, ruling that there was sufficient evidence to support a finding that the card was an access device.

¶3 A person is guilty of possessing stolen property in the second degree if he or she possesses a stolen access device.[1] The court instructed the jury that to convict Clay it was required to find that the prosecution proved the following elements beyond a reasonable doubt:

[1] RCW 9A.56.160(1)(c).

(1) That on or about the 14th day of October, 2005, the defendant knowingly possessed stolen property; (2) That the defendant acted with knowledge that the property had been stolen; (3) That the defendant withheld or appropriated the property to the use of someone other than the true owner or person entitled thereto; (4) That the stolen property was an access device; and (5) That the acts occurred in the State of Washington.

Clay challenges the fourth element, arguing that there was insufficient evidence to support the jury's conclusion that the Mervyns card was an access device.

¶4 The court also instructed the jury that

[a]ccess device means any card, plate, code, account number or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services, or anything else of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by paper instrument.[2]

¶5 Clay argues that the State failed to prove that the card could "be used" to obtain anything of value because it was never activated. He further argues that a card is an access device under *State v. Schloredt*[3] only if the prosecution can establish that the card could have been used "when last in possession of its lawful owner,"[4] and that the card cannot be an access device because it was never in Llorico's possession.

¶6 When reviewing a claim of insufficient evidence, we must determine, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime charged.[5] We draw all reasonable inferences from the evidence in the prosecu-

---

[2] RCW 9A.56.010(1).

[3] 97 Wn. App. 789, 987 P.2d 647 (1999).

[4] *Schloredt*, 97 Wn. App. at 794.

[5] *State v. Brockob*, 159 Wn.2d 311, 336, 150 P.3d 59 (2006).

tion's favor and interpret the evidence most strongly against the defendant.[6] Circumstantial evidence is as probative as direct evidence.[7] We review issues of statutory interpretation de novo.[8]

¶7 In *Schloredt* this court did not reach the question of whether a card that has never been activated may be an access device. Schloredt was convicted of possession of stolen property for possessing four stolen credit cards.[9] He argued that the State had not proved that the cards could "be used" because the State failed to prove that the cards had not been canceled after the theft.[10] This court held that the "can be used" language in RCW 9A.56.010(1) was "a reference to the status of the access device when last in possession of its lawful owner."[11] Focusing on whether an activated card that had been in the possession of its intended user before it was stolen may still be an access device if it is canceled after the theft, the court held that "[w]hether the victims cancelled their accounts prior to Schloredt's arrest is irrelevant."[12]

¶8 While the Mervyns card was never in Llorico's possession, the statutory definition of "access device" does not require that the account holder have possession of it at any time. Rather, the statute requires only that the device "can be used" to access anything of value.[13]

¶9 In addition, the statute does not require that the access device be activated. RCW 9A.56.010 focuses exclusively upon the capacity of the device to be used in the manner described and does not include within its definition

---

[6] *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006).

[7] *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).

[8] *Woods v. Kittitas County*, 162 Wn.2d 597, 607, 174 P.3d 25 (2007).

[9] *Schloredt*, 97 Wn. App. at 791-92.

[10] *Schloredt*, 97 Wn. App. at 793.

[11] *Schloredt*, 97 Wn. App. at 794.

[12] *Schloredt*, 97 Wn. App. at 794.

[13] RCW 9A.56.010(1).

of "access device" any reference to the status of that device with its issuer. While whether a card has been activated by its intended user may be relevant, this fact is not dispositive in determining whether it "can be used." Companies that issue cards and merchants who accept them employ, to widely varying degrees, a variety of security measures, which may or may not include requiring a user to provide personal information in order to "activate" a card. A credit card may be an "access device" regardless of whether the intended user has activated the card, if the evidence supports a finding that the card could be used in the manner described by RCW 9A.56.010(1).

¶10 Viewed most favorably to the State, the evidence is sufficient to support the jury's finding that the Mervyns card found in Clay's possession was an access device. Llorico had a single active Mervyns account that had been assigned a new account number, but she had not received a card corresponding to that new number. Someone other than Llorico had signed her name in the signature box on the back of the card. Although Llorico testified that she had not activated the card, no evidence was offered that would prevent a rational juror from concluding that the card had been, or could be, activated by someone else or used without activation. As noted by the trial court, there was "no testimony that any additional steps needed to be taken to activate that card." The verdict is supported by sufficient evidence.

¶11 Affirmed.

SCHINDLER, C.J., and GROSSE, J., concur.

Review denied at 165 Wn.2d 1014 (2009).