[No. 28403-4-III.   Division Three.   February 8, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS CRAIG ROSE, *Appellant*.

30

*Nancy P. Collins* (of *Washington Appellate Project*), for appellant.

*Andrew K. Miller, Prosecuting Attorney,* and *Megan A. Bredeweg, Deputy,* for respondent.

¶1 KORSMO, A.C.J. — The primary question presented in this appeal is whether an inactivated credit card that requires a payment to become activated constitutes an access device. We conclude that it does. In the unpublished portion of this opinion we consider additional issues and affirm the convictions.

## FACTS[1]

¶2 Douglas Rose was arrested September 16, 2008. A search incident to arrest produced methamphetamine and what appeared to be an unactivated credit card in the name of Ruth Georges. In addition to Ms. Georges' name, the plastic card had an account number, a sticker with activation instructions, and a magnetic strip on the back. Mr. Rose was charged with possession of stolen property in the second degree and possession of a controlled substance.

¶3 Ms. Georges testified that Mr. Rose had visited her apartment the morning of the arrest. She stated that the credit card was hers; she had received it in a mail solicitation. A $30 fee was required to activate the card. Ms. Georges did not intend to activate the card, so she placed it in a cigar box and put that box in the trash. She did not give Mr. Rose permission to have the card and was unaware that he had it.

¶4 Following a bench trial the court found Mr. Rose guilty of second degree possession of stolen property under RCW 9A.56.010(1) and possession of a controlled substance. This appeal timely followed.

## ANALYSIS

¶5 Mr. Rose challenges the sufficiency of the evidence to support the conviction for second degree possession of stolen property, arguing that the credit card was neither stolen nor an access device. That challenge presents two

---

[1] Facts relevant to the unpublished portion of this opinion are discussed in conjunction with the issues presented there.

questions: (1) whether a credit card taken from a trash can inside someone's apartment without permission constitutes stolen property and (2) whether a credit card received in a mailed solicitation that requires a fee to be activated constitutes an access device under RCW 9A.56.010(1).

¶6 Evidence is sufficient to support a conviction if the evidence permitted the trier of fact to find that each element of the crime had been proved beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). A challenge to the sufficiency of the evidence presented at a bench trial requires a reviewing court to determine whether substantial evidence supports the challenged findings and whether the findings support any challenged conclusions of law. *State v. Madarash*, 116 Wn. App. 500, 509, 66 P.3d 682 (2003). Deference is given to the trier of fact, who resolves conflicting testimony, evaluates witness credibility, and decides the persuasiveness of material evidence. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989). Unchallenged factual findings are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

*Stolen Property*

¶7 Mr. Rose argues that the trial court erroneously relied upon *State v. Askham*, 120 Wn. App. 872, 86 P.3d 1224, *review denied*, 152 Wn.2d 1032 (2004), in concluding that the credit card he took from the garbage was stolen. He claims that Ms. Georges abandoned the card by placing it in a trash can located in her apartment,[2] though he cites no authority for that proposition.

---

[2] Mr. Rose challenges the court's finding that Ms. Georges "had thrown the credit card into the trash receptacle that was located in, and at all times relevant hereto, remained in her apartment." Clerk's Papers at 27 (Finding of Fact 13). However, the record provides sufficient information from which the court could reasonably infer the location of the trash. Ms. Georges testified that while in her apartment, she took the card from her coffee table and placed it into a cigar box, then put that in the trash. Her words were, "I threw it in the garbage can." Report of Proceedings (RP) (June 30, 2009) at 84, 86. While she did not state where precisely her trash can was, the logical inference is that it was inside. Further, when Mr. Rose testified to his version of events, he stated that while in the apartment, "she stated that she had some garbage to go out, and I just threw

¶8 A person commits second degree possession of stolen property if he possesses a stolen access device. RCW 9A.56.160(1)(c). " 'Stolen' means obtained by theft, robbery, or extortion." RCW 9A.56.010(14). "Theft," in turn, means to "wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(a). The "property of another" is an item in which another person has an interest and over which the defendant may not lawfully exert control absent permission. *State v. Longshore*, 141 Wn.2d 414, 421, 5 P.3d 1256 (2000). Specific criminal intent may be inferred from defendant's conduct where it is plainly indicated by a logical probability. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

¶9 This case is factually similar to *Askham* on this point. There the defendant used credit card information he found in another's garbage. *Askham*, 120 Wn. App. at 885. This court determined that by removing credit card information from the trash without permission, the defendant deprived the credit card's owner of its authorized use. *Id.* at 884-885. The defendant's actions amounted to theft of an access device under RCW 9A.56.040(1)(c). *Id.* at 885.

¶10 Similarly here, the taking of the card from the garbage amounted to theft just as much as obtaining the account information from the garbage did in *Askham*.[3] *Askham* is controlling in this case. Sufficient evidence supports the trial court's findings and conclusion that the card was stolen from Ms. Georges.

*Access Device*

¶11 Mr. Rose next argues that the trial court incorrectly relied upon *State v. Clay*, 144 Wn. App. 894, 184

---

everything in the box. . . . I grabbed the box, and I went out." RP (June 30, 2009) at 103. Drawing reasonable inferences in favor of the State, substantial evidence supports the trial court's finding that the trash can was inside Ms. Georges' apartment.

[3] Mr. Rose does not challenge the court's findings that he removed the credit card from Ms. Georges' trash without her consent.

P.3d 674 (2008), *review denied*, 165 Wn.2d 1014 (2009), for its conclusion that the unactivated credit card received by mail solicitation was an access device.

> "Access device" means any card, plate, code, account number, or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services, or anything else of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by paper instrument.

RCW 9A.56.010(1). A credit card may be an access device despite being unactivated, as long as it is capable of activation and use within the meaning of the statute. *Clay*, 144 Wn. App. at 898-899.

¶12 In *Clay*, the defendant was convicted of second degree possession of stolen property for possessing a stolen, unactivated Mervyns card that was intended as a replacement card for an existing account. *Id.* at 896. He argued that the State had failed to prove that the card could "be used" to obtain anything of value because the card was unactivated. *Id.* at 897. The court rejected his argument on the grounds that the statutory definition of "access device" did not require the stolen card to have been in the owner's possession, nor did it require that the card be activated. *Id.* at 898-899. The court found sufficient evidence to uphold Clay's conviction because no evidence was offered to prevent a rational juror from concluding that the card could have been activated or used by someone else within the meaning of the statute. *Id.*

¶13 Mr. Rose attempts to distinguish this case from *Clay* in two ways: (1) this case does not involve an existing credit account and (2) the card in question could not have been used by its owner to obtain anything of value and was more akin to an application. Washington courts have not directly addressed whether an unactivated credit card received in a mailed solicitation is an access device.

¶14 Questions of statutory interpretation are reviewed *de novo*. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 708,

153 P.3d 846, *cert. denied*, 552 U.S. 1040 (2007). Statutes are construed to give effect to the legislative intent. *State v. Elmore*, 143 Wn. App. 185, 188-189, 177 P.3d 172, *review denied*, 164 Wn.2d 1035 (2008). In so doing, we effectuate the plain meaning of the statute; give words their ordinary meaning; and take into account the context of the statute, related provisions, and the entire statutory scheme. *Id.* We will not read a statute hypertechnically if doing so would yield an absurd result. *Pudmaroff v. Allen*, 138 Wn.2d 55, 65, 977 P.2d 574 (1999).

¶15 A plain reading of RCW 9A.56.010(1) shows the card in question here to be an access device because it was capable of being used in the manner described by the statute, *i.e.*, to purchase items of value. *See Clay*, 144 Wn. App. at 898-899. When viewed most favorably to the State, there is sufficient evidence to support the trial court's conclusion that the card in question was an access device under RCW 9A.56.010(1) and *Clay*. The record demonstrates that the card was capable of establishing, and then accessing, a credit account. The card had Ms. Georges' name on it, a sticker that gave instructions how to activate the card, an account number, and a magnetic strip. Though a payment of $30 was required to both activate the card and establish an active credit account, the record shows that upon activation the card was capable of acquiring items of value. Finally, as in *Clay*, nothing in the record would prevent a rational trier of fact from concluding that the card could be activated by someone other than its owner. That intermediate steps or other "access devices" may have been required is irrelevant. The statute does not limit the definition of access devices to cards requested by the owner, nor does it exclude inert cards merely because they have yet to be activated. Accordingly, we hold that the card in question is an access device because it was capable of activation, then use in the manner prescribed by RCW 9A.56.010(1).

¶16 Substantial evidence supports the trial court's conclusion that Mr. Rose was in possession of a stolen access device. The judgment and sentence is affirmed.

¶17 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SWEENEY and SIDDOWAY, JJ., concur.

Review granted at 172 Wn.2d 1014 (2011).