# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50001-9-II |
| Respondent, | |
| v. | |
| MELWYN VAN FIELDS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Melwyn Fields appeals his jury trial conviction for second degree theft of an access device and argues that the evidence was insufficient to convict him.  We disagree and affirm his conviction.

## FACTS

In 2016, the State charged Fields by amended information with second degree theft of an access device.  At Fields's trial, Heather Freeman,[1] Freeman's ex-boyfriend Scott Brill, and Officer Justin Doherty testified for the State.  In 2014, on a bus that she and Brill were riding, Freeman had forgotten her purse, containing her wallet with her "EBT card"[2] and identification inside.  Report of Proceedings (RP) at 89.  The only other person sitting near Freeman and Brill was Fields.

---

[1] Freeman's last name at the time of the theft was Kempton.

[2] "[E]lectronic benefit transfer" card.  WAC 388-412-0046(1)(b).

Shortly after Freeman realized that her purse was missing, she and Brill went to the Civic Center and filed a police report. As Freeman and Brill were leaving the Civic Center, they again encountered Fields. They confronted Fields, who denied taking Freeman's purse but acted suspiciously. Surmising that Fields had stolen Freeman's purse, Brill and Freeman obtained Officer Doherty's assistance.

Officer Doherty contacted Fields, and after gaining consent to search, Doherty found Freeman's wallet in Fields's backpack. In the Civic Center men's restroom, Brill also found Freeman's purse with its contents, including the EBT card and her identification, scattered on the floor.

Freeman explained to the jury that an EBT card "is issued to someone through [Department of Social and Health Services (DSHS)]." RP at 89. "It's a way you can get your TANF[3] and food stamp benefits issued to you." RP at 89. An EBT card could be used "like any other debit card at the store" as long as one entered a code. RP at 89. When Fields cross-examined Freeman, he did not inquire about her EBT card's functionality or EBT cards at all.

Fields also testified. He explained that he was homeless at the time of the theft, and he claimed that he found only Freeman's wallet while looking for cigarettes. Fields said that he had not found the purse.

The jury found Fields guilty as charged. Fields appeals his conviction.

---

[3] "'[T]emporary assistance for needy families.'" *Green v. Dep't of Soc. & Health Servs.*, 163 Wn. App. 494, 504 n.9, 260 P.3d 254 (2011) (quoting WAC 388-400-0005).

ANALYSIS

Fields argues that his conviction should be reversed because the evidence was insufficient that he stole an "access device" as defined by RCW 9A.56.010(1). We disagree.

## I. LEGAL PRINCIPLES

The test for sufficiency of the evidence is whether viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). We draw all reasonable inferences in favor of the State. *Homan*, 181 Wn.2d at 106.

As charged here, second degree theft is a felony that occurs when one "commits theft of" "[a]n access device." Former RCW 9A.56.040(1)(d) (2013).[4] RCW 9A.56.010(1) defines an "access device" as

> any card, plate, code, account number, or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services, or anything else of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by paper instrument.

## II. "MEANS OF ACCOUNT ACCESS"

To be an access device, an item must be a "card, plate, code, account number, or other *means of account access*." RCW 9A.56.010(1) (emphasis added); *State v. Nelson*, 195 Wn. App. 261, 266, 381 P.3d 84 (2016). Fields appears to assert that an EBT card is not a means of account access because it is not like a credit card or funded gift card, both of which have been held to be

---

[4] The legislature amended RCW 9A.56.040(1) in 2017 to except "theft from a vulnerable adult" from the definition of second degree theft, a change not relevant to our analysis. LAWS OF 2017, ch. 266, § 11.

means of account access. The State responds that Fields fails to show a meaningful difference between an EBT card and a funded gift card or credit card. We agree with the State.

In *Nelson*, we examined the meaning of "'means of account access'" in RCW 9A.56.010(1). 195 Wn. App. at 266. We held that "account" in "means of account access" means more than a bank account and "broadly includes records of a business relationship involving ongoing credits and debits or obligations." *Nelson*, 195 Wn. App. at 267-68. Credit cards, debit cards, or funded gift cards may be "means of account access." *State v. Johnson*, 188 Wn.2d 742, 754, 399 P.3d 507 (2017) ("[T]he intent requirement for the second degree theft conviction referenced the *credit and debit cards, i.e., the access devices*.") (emphasis added); *Nelson*, 195 Wn. App. at 268.

Viewed in the light most favorable to the State, Freeman's testimony that her EBT card is a means of "getting" state-issued TANF and food stamp benefits supports that an EBT card is used to access credits provided to her. A card used to access state-issued benefits fits within *Nelson*'s broad definition of "account" and is hence a "means of account access" for RCW 9A.56.010(1)'s purposes. *See* 195 Wn. App. at 267.

Fields argues that an EBT card is unlike a credit card or funded gift card because credit and gift cards are easier to use illicitly. We disagree because Fields fails to provide a meaningful distinction between EBT cards and credit cards or funded gift cards. In *Nelson*, a funded gift card was a means of access because it was "'a card entitling the recipient to receive goods or services of a specified value from the issuer'" so that it could "access an account." 195 Wn. App. at 268 (quoting MERRIAM-WEBSTER UNABRIDGED DICTIONARY, http://www.Merriam-Webster.com/dictionary/gift%20card (last visited July 5, 2016)). As discussed, Freeman's

testimony similarly supports that an EBT card entitled her to access state-provided food stamp and TANF benefits so that it is a "means of account access."

Further, both debit and credit cards can be "means of account access." *See Johnson*, 188 Wn.2d at 754. Here, Freeman testified that an EBT card can be used just like a debit card. This testimony again supports that her EBT card was a "means of account access."

Viewed in the light most favorable to the State, there was sufficient evidence to show that Freeman's EBT card satisfied the first part of the definition of "access device"—"any card, plate, code, account number, or other means of account access." RCW 9A.56.010(1). Next, we look to whether sufficient evidence supports that the EBT card could "be used alone or in conjunction with another access device to obtain money, goods, services, or anything else of value." RCW 9A.56.010(1).

### III. "CAN BE USED" TO OBTAIN SOMETHING OF VALUE

To be an access device, the means of account access must be one "that can be used alone or in conjunction with another access device to obtain money, goods, services, or anything else of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by paper instrument." RCW 9A.56.010(1). Fields argues that the State had to show that the EBT card could, in fact, be used to access something of value and that the State failed to do so. Again, we disagree.

The State must prove the access device's status—that it could be used—when the device was last in possession of its lawful owner. *State v. Schloredt*, 97 Wn. App. 789, 794, 987 P.2d 647 (1999). "The State b[ears] the burden to prove that the card 'can be used' to obtain something of value." *State v. Rose*, 175 Wn.2d 10, 18, 282 P.3d 1087 (2012). Where an unactivated card is not

tied to an existing, active account, evidence that it can be used to obtain something of value is necessary to meet the State's burden of proof. *Rose*, 175 Wn.2d at 18 n.1.

The evidence about the EBT card's functionality was Freeman's responses when the prosecutor asked her to explain what an EBT card is: "An EBT card is issued to someone through DSHS. It's a way you can get your TANF and food stamp benefits issued to you." RP at 89. Freeman also testified that "[y]ou can use it just like any other debit card at the store" and that there is an access code. RP at 89.

Although Freeman was responding to a question about EBT cards generally, it is a reasonable inference from her testimony that her description of EBT cards' general characteristics applied to her card. Because it is a reasonable inference that Freeman's description applied to her card, Freeman's testimony is evidence that her card was a way for her to access her TANF and food stamp benefits that she used just like a debit card at the store. Indeed, Freeman was carrying her EBT card in her wallet when it was stolen, and it is also a reasonable inference that she did so because she used her card and thus that it was active.

Fields argues that this case is like *Rose*, where our Supreme Court held that the State failed to meet its burden to show a credit card could "be used" to obtain something of value. 175 Wn.2d at 18. But in that case, there was affirmative evidence that the card was unactivated—the victim received the card in the mail as a credit card offer, did not have the $30 needed to activate the account, and discarded the card. *Rose*, 175 Wn.2d at 13. The Supreme Court acknowledged that an unactivated card may sometimes be an access device. *Rose*, 175 Wn.2d at 15 (citing *State v. Clay*, 144 Wn. App. 894, 184 P.3d 674 (2008)). But because the discarded credit card was unsigned and not linked to an existing, active account, the reasonable inferences from the evidence

were insufficient to show that the card could be used to obtain something of value. *Rose*, 175 Wn.2d at 17-18.

This case is factually distinct from *Rose*. Here, there is nothing in the record to suggest that the EBT card was unactivated, unfunded, or otherwise unlinked to an existing account. Fields's speculative arguments that the EBT card could have been inactive, linked to an expired account, or otherwise unusable therefore fail.[5]

This case is more similar to *Clay*. In that case, it was not dispositive that a credit card was unactivated because the evidence showed that the credit card nevertheless had the capacity to be used. *Clay*, 144 Wn. App. at 898-99. Here, the evidence even more strongly supports that the EBT card could be used to obtain something of value because there were *no* facts that the EBT card was unactivated and because the reasonable inference from Freeman's testimony was that she could use *her* EBT card in the manner she described.

Fields's reliance on *Rose* is misplaced and his remaining arguments are either speculative or rely upon a federal case interpreting a federal statute. *See United States v. Onyesoh*, 674 F.3d 1157, 1159 (9th Cir. 2012) (defining "access device" in 18 U.S.C. § 1029 and applying federal sentencing guidelines). We reject Fields's arguments and hold that there was sufficient evidence to show that the EBT card could be used to obtain something of value. Because the State provided sufficient evidence that the EBT card met the statutory definition of "access device," we affirm Fields's conviction.

---

[5] The appellant implies that the card could not be used to access an account because it listed Freeman's previous name, Kempton. But at the time of the theft, Freeman's last name was still Kempton.

No. 50001-9-II

IV. APPELLATE COSTS

Fields asks that we deny appellate costs to the State should the State substantially prevail. Under RAP 14.2, a commissioner of this court will determine in due course whether to award appellate costs.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MORGAN, C.J.

SUTTON, J.